J. K. OATES et al., Appellants, v. DR. B. B. LEONARD, Appellee.

CONTRACTS: Validity—Restraint of Trade. A contract under which a person sells his business and agrees not to re-engage in said business in said place for a period of 10 years is valid. Evidence reviewed, and held insufficient to justify an injunction to restrain the violation of such a contract.

*Appeal from Woodbury District Court.*—W. G. SEARS, Judge.

JUNE 25, 1921.

ACTION in equity, to enjoin defendant from practicing medicine. Decree for defendant, dismissing plaintiffs' petition on the merits, after trial. Plaintiffs appeal.—*Affirmed.*

*E. C. Logan, Carl R. Jones,* and *Campbell Bros.,* for appellants.

*Snell Bros.* and *Henderson, Fribourg & Hatfield,* for appellee.

PRESTON, J.—For a number of years prior to the execution of the written contract dated November 8, 1917, defendant, appellee, had been a practicing physician and surgeon, located in the town of Correctionville, Iowa, where he was conducting a small hospital, and enjoyed a good practice in the town and surrounding country. Plaintiffs are both practicing physicians and surgeons, and were located in the town of Battle Creek, Iowa. On the date last mentioned, defendant sold his business, including his hospital and good will, to plaintiffs, and agreed in the written contract not to again engage in the practice of medicine or surgery in the town of Correctionville or surrounding country for a period of 10 years. The contract, in so far as it relates to the obligations of defendant, is quite similar to the contract in *Rowe v. Toon,* 185 Iowa 848. Thereafter, defendant moved to his farm, some two or three miles from the town, and with some assistance from his young son, who was attending school in the town, carried on the farm. He did not maintain an office or drug store after the execution of the contract. The contract was carried out in all respects, except that appellants contend that he continued to attend women in childbirth, and to write prescriptions for people in the territory surrounding the town of Correctionville. The evidence shows that defendant wrote about 120 prescriptions in the 3½ years after the contract, and between that time and the trial. The last prescription, as we understand the record, was in February, 1920, and there were 3 in 1919; the others, prior thereto. It appears that a doctor who maintains no stock of drugs would write, on the average, 20 or 25 prescriptions a day, and that defendant wrote from 25 to 30 in his early practice. The 120 written by defendant in the 3½ years after he sold out would be less than 3 a month, on an average.

The defendant, answering, denied that he had violated the contract; denied that he had injured and willfully made inroads into the professional practice and business of plaintiffs; and denied that he would cause them loss or injury unless he was enjoined; alleged the fact to be that he treated only emergency

cases which had arisen during the absence of the practicing physicians in said community, or attended emergency cases which the resident physician refused, or were unable to treat; alleged that the only cases in which he had appeared or acted as a physician or prescribed for patients were those in which the interest of humanity and the health of the public so demanded; further denied the right or equity of plaintiffs to enjoin him from assisting humanity without charge, in the event of great emergency; and alleged that to do so would be contrary to public policy and detrimental to the general health and welfare of the community, and that, if the contract were construed so as to enjoin him from rendering assistance in an emergency, and without expectation of reward, it would be against public policy.

The trial court held that there was no violation of the contract, and that the equities are with the defendant.

Two or three witnesses testified to instances where defendant had been called to treat patients, and the circumstances of such employment; but, since their testimony is substantially the same as the testimony of defendant with reference thereto, we shall not set out their testimony. The defendant was called as a witness for the plaintiffs, and is the principal witness in the case for them, and testified to the incidents just referred to, and to others relied upon by appellants as constituting a violation of the contract.

Two points are relied upon by appellants: First, as to whether the contract is legal; and second, whether the evidence shows a violation of the contract, justifying a permanent injunction. That such a contract is legal was decided in the *Rowe* case, supra, although the facts in the instant case are quite different. Appellee contends that, under the evidence, he is not practicing medicine, within the meaning of the contract and the law; and that, since he recognizes the binding obligation of the contract, and is trying to get entirely out of the practice, even in emergency and charity cases, it will be oppressive, and humiliating to him in the eyes of his neighbors, if he is permanently enjoined, and that, too, when substantially all the transactions complained of occurred a year or more prior to the commencement of this suit; that an injunction could not properly issue, where the acts complained of, such as they were, and the

alleged practice of medicine, have terminated. He contends, also, that to strictly construe the contract, as contended by appellants, would prevent him from treating a member of his own family, or from rendering medical assistance to a neighbor in an emergency, and when the service of plaintiffs or any other doctor could not be secured.

As said, the testimony for plaintiffs depends largely upon their witness the defendant, whose testimony is somewhat extended, and is covered by 25 pages of the abstract. The plaintiffs were younger practitioners. Defendant had been in practice longer, and appellants concede that he had the confidence of the community. A petition, signed by about 400 people in the community, was presented to defendant, shortly before the trial,—with which petition defendant says he had nothing to do, but addressed to him,—to see if some arrangement could not be made whereby he could answer calls, in the event of emergency, or when the other doctors were not available. This petition was introduced in evidence, and defendant says that it was in spite of the fact that he was farming, and did not desire to practice. Those for whom he prescribed and whom he attended were his former patients, and he says that he endeavored to have them go to the plaintiffs. For the most part, the cases and prescriptions complained of were shortly after the defendant sold his practice. Some of the prescriptions were written by defendant without expectation of pay therefor. Appellants contend that, if defendant should prescribe and practice without making any charges, it would be the keenest kind of competition for them. This might be so, under some circumstances. On the other hand, if such persons were indigent, as the evidence tends to show some of them were, there would be no prejudice in a financial way to plaintiffs. One of the cases treated by defendant was a person who was on a black list, and whom plaintiffs would not be required to treat, and whom, as we understand the record, they would not have treated. Some of the childbirth cases complained of were where women, after their pregnancy, and before defendant sold out, had engaged the defendant, who had been their physician, to attend them. It is true, as contended by appellants, that no reservation of such cases was made in the contract; but the parties would not have gone to plaintiffs in any

event,—at least some of them. For instance, one woman expected to go to Council Bluffs, but was not able to go, because she was then in labor. The defendant was asked to come over to the house, to see if she could be moved to Council Bluffs. When defendant was called, he was working in his overalls, and changed his clothes, and went over to see if she could be taken away. He told her that he was not practicing; and she said she would not have anyone else, and that she would lie there and die. The child was born in a short time; and in this emergency, defendant assisted her. The circumstances surrounding some of these cases will be stated later, in a general way. Of cases treated by defendant, twelve are complained of, mostly confinement cases. In them, defendant rendered service under circumstances similar to those already indicated. The 12 would be an average of less than 4 a year, during the 3½ years; but, as said, they were, for the most part, soon after defendant sold out. Some of these were neighbors. One, at least, lived near another town, and distant from Correctionville. In some, if not all, of the confinement cases which defendant attended, he attempted to get them to employ plaintiffs; but they insisted on his carrying out the agreement he had made with them before he sold out. In another case, he had treated patients before; and he testifies that, according to the ethics of the medical profession, when a doctor has once treated a case, he ought to carry it through. Some of the cases complained of were of that character. In another case, defendant was called by phone at 5 o'clock in the morning, and was asked by the woman's husband to come and attend his wife in confinement. Defendant refused to go, and told them to get somebody else. He went to bed, and in an hour was called again, and was told that they could not get anyone else; that they were all busy with the flu; that there was so much sickness that he couldn't get anybody else. He asked defendant if he wouldn't come, saying that his wife was very sick. Defendant said he hesitated, and did not know what to do, and finally said he would go if he had to go to jail for it; so he went and took care of her. Another instance is where defendant was making hay, and they phoned him that a neighbor boy was very sick, and that their doctor was away. He left his hay, and found the boy's temperature to be 105. They told

him that one of the plaintiffs had previously attended him, but that the doctor was away, fishing. That was the only time he called there. Another instance was where a neighbor and life-long friend caught his finger in a gas engine, and the end of it was hanging by a thread, and defendant clipped it off and bandaged it up. Defendant says it was an act of charity, and ''as much as he would have done for anybody.'' Another instance: A woman was being attended by another doctor. The woman had a severe hemorrhage after childbirth, and they sent for defendant to come in a hurry, to assist the other doctor. Later, she became pregnant again, and asked him to take care of her, and he refused. In that case, the woman's husband was poor pay. He thinks he was on the black list. He had been informed that other doctors refused to go for that reason. In another case of confinement, in July, 1918, he attended another confinement case, when there were no other doctors in town. Plaintiff Oates was away on a summer vacation, and the patient informed defendant that the other doctors had requested the patient to get defendant. Defendant made one call on another lady, when the other doctors were in Sioux City for a day. Another lady was troubled with asthma, and defendant met her in the road. She formerly did work for him. Both were asthmatic. She had been to another doctor, and came out to see what defendant did in his own case. In another slow, tedious confinement case, another doctor had been all night with the patient, and had to make some other calls. While he was gone, they sent for defendant. They thought they had to have someone right away. The boy whom they sent ran the horses all the way, and defendant got there just as the child was born. He testifies that, with the exception of two cases, all of them were during the year 1918, and that there were two cases in the middle of the summer, when there was no one there. He testifies that, since he sold out, plaintiff Oates has called him in consultation in cases in Correctionville. Defendant is carrying on his farm, and employs no help; does all the work himself, except such as he gets from his 18-year old son; keeps 36 head of cattle, and 125 hogs; has no office and no drugs at his farm. He then testifies in regard to the different prescriptions, giving the dates, the occasions, and the circum-

stances. We shall not go into further detail. Enough has been set out to show the general situation.

We are not prepared to say that, under such a contract, a physician should be enjoined, as for a violation of the contract, when he acts in an emergency, and when another doctor cannot be secured. It may be that, strictly speaking, not all the transactions shown were of that character; but for the most part, they were shortly after the defendant's retirement. Naturally, patients would be more insistent at that time than they would later, and the transactions would grow less, as time passed. For the most part, the transactions occurred a considerable time before this suit was brought. We think there is force in appellee's contention that an injunction is not intended as punishment for past events. The purpose is to prevent similar conduct in the future. Numerous cases might be cited, so holding. It is now apparent, and was at the time of the trial, that defendant is not claiming the right to practice medicine, nor does the record show any threat or purpose so to do. He understands the situation now, and that he is liable to an injunction if he violates the contract. Appellee cites cases to the proposition that contracts in restraint or partial restraint of trade are not favored, and will be strictly construed, so as not to unduly or unreasonably extend the restriction beyond the expressed or fairly implied intention of the parties. Other cases are cited, to the proposition that a contract of this nature can be construed to be legal only so far as to afford ample protection to the party in whose favor it is imposed, while, at the same time, it is in no way injurious to the public. It is also thought by appellee that plaintiffs have not shown themselves entitled to an injunction, because they have not shown that there has been or will be such violation of the contract as to work irreparable injury to them, and because they have not shown that they have no speedy or adequate remedy at law.

We shall not take the time to discuss these several propositions. Under the entire record, we think the equities are with the defendant, and that the trial court properly dismissed plaintiff's petition. The judgment is—*Affirmed*.

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.