W. W. LARSEN et al., Appellees, v. H. H. BURROUGHS, Appellant.

No. 43983.

FEBRUARY 8, 1938.

Diamond & Jory, for appellant.

Roseberry & Pitts, for appellees.

SAGER, J.—The plaintiff is a partnership of medical men operating as the Le Mars Clinic. In 1934, Shepard, one of the members, became disabled, and O'Toole entered the partnership. In September 1934, the defendant was advised of the prospective retirement of Shepard, and negotiations were had which finally resulted in the execution, on September 20th of that year, of the contract which furnishes the basis of discussion herein. After providing for the payment of $1,800 a year beginning October 1, 1934, and other specifications which we need not now consider, the contract provides:

"Party of the Second Part agrees that he will not engage in the practice of medicine or surgery or any of the healing arts, in the City of Le Mars, Iowa, outside of the Le Mars Clinic group (same being Party of The First Part) for the period of ten years from the date of expiration of this contract, without the consent of the said Party of the First Part."

Following the execution of this contract defendant was introduced socially and professionally to the plaintiffs' patients, was taken into consultations, and recommended as a competent and dependable doctor. The retiring physician, Shepard, recommended him to his patients, took him with him to make calls, and told his patients that he (Shepard) was leaving the clinic and that thereafter they should call for the defendant and he would take care of them. Generally the defendant was given every encouragement and assistance to work within the circle of the plaintiffs' patients. He had no previous acquaintance in that territory, and it appears without question from the record that whatever standing he had in the community as a medical man was derived from his contact with the plaintiff group.

During the course of the year provided for by the contract some of the members of the plaintiff partnership began to doubt the defendant's interest in group practice, and this was the subject of some consideration among the plaintiff partners. As the

expiration of the term of the contract approached, the subject of defendant's further connection with or relationship to the plaintiffs naturally became of interest to all parties. As we read the record, there was no agreement, express or implied, for a definite extension of the term of defendant's employment, but it was finally agreed, tacitly at least, that he should continue to work for the plaintiffs under a somewhat larger or better salary. During the time matters were in this condition there was some discussion between the defendant and the plaintiffs as to the status of defendant. These matters need not now have specific attention.

On February 9, 1936, the plaintiffs gave to the defendant the following notice:

"You are hereby notified that the written agreement of employment entered into Sept. 20, A. D. 1934, between yourself and the Le Mars Clinic of Le Mars, Iowa, which was extended in all its terms, except as to definite period of employment, and with a slight increase in salary, after October 1, 1935, by mutual understanding of the parties, and confirming the oral notice which you received December 17, 1935, your employment with the Le Mars Clinic is terminated as of the date March 1, A. D. 1936.

"This statement is given to you at your request and is in no way intended as any reflection upon your ability as a physician or surgeon."

Following the termination of the time fixed by this notice, the defendant, according to the allegations of the petition (which are not seriously denied in the record) "is now engaged, and is about to engage, in the practice of the healing arts in the city of Le Mars, outside of the plaintiff group, in violation of his contract, and will continue to do so unless restrained by this court."

What has been said is sufficient to indicate in a general way the controversy before us. The record is long and its examination has involved a considerable amount of labor, the result of which has persuaded us that the trial court not only accurately perceived the rules of law governing cases of this kind, but correctly applied them to the case before it; and, since the decree of the trial court in concise language sums up the record made before it, we quote rather extensively from it:

"As shown by the pleadings and the evidence in the case, the plaintiffs, at the commencement of this action, were engaged as a partnership in the practice of the profession of physicians and surgeons in the city of Le Mars, Plymouth County, Iowa. The Le Mars Clinic had been operated for a number of years prior to the commencement of the action as a co-partnership, although a few changes occurred from time to time in the personnel of the individuals who were members of that partnership, and such a change, or substitution, was in contemplation at the time the contract of employment, 'Exhibit D,' was entered into between the said partnership and the defendant. The contemplated change was shortly thereafter effected by the sale of the interest of Doctor W. T. Shepard, retiring partner, to the plaintiff, Doctor L. C. O'Toole.

"The defendant, Doctor H. H. Burroughs, at the time of his employment by the plaintiffs, had but recently completed his interneship, and had never resided or practiced his profession in the aforesaid city of Le Mars, Plymouth County, Iowa; and prior to said employment, had no acquaintanceship of any extent in said city of Le Mars or vicinity.

"The aforesaid written contract of employment, 'Exhibit D,' provided that the defendant was to work for the plaintiffs, as a physician and surgeon, for the period of one year, commencing October 1st, 1934, and contained a provision to the effect that the defendant would not engage in the practice of medicine or surgery, or any of the healing arts, in the city of Le Mars, Iowa, outside of the Le Mars Clinic group, for the period of ten years from the date of expiration of said contract, without the consent of the members of the Le Mars Clinic. It is the later provision which the plaintiffs claim has been violated by the defendant, and against such violation they seek the injunctive relief prayed.

"The privilege of a duly licensed physician to practice his chosen profession when and where he may wish is a right which the courts will zealously protect, but it is also a privilege which, by valid, voluntary contract, the physician may restrict; providing that such contractual restrictions are reasonable, and not contrary to public policy."

Further, commenting more directly upon the defendant's relation to the practice of the plaintiff group, the court said:

"Under the contract referred to, the defendant, a young man and a comparatively inexperienced practitioner, with no previous residence in the city of Le Mars, was taken into the offices of the plaintiffs, most of whom were old and established practitioners. It inevitably followed that the defendant became acquainted with many patients of the Le Mars Clinic, and it would be decidedly uncomplimentary to the defendant to assume that such acquaintanceship resulted in antagonism between the defendant and such patients. On the contrary, it is quite reasonable to assume that, in the course of time, and due to personal and professional contacts, many of them, at least, became on very friendly terms with the defendant. To permit the defendant to leave the offices of the plaintiff and establish a competing office in the same town, would be decidedly unequitable, unless, as claimed by the defendant, the plaintiffs have, by some act, or acts, of theirs, relieved the defendant from the restrictive agreement under discussion. No claim is made by the defendant to the effect that the plaintiffs have given their consent to his so engaging in the practice of his aforesaid profession in the city of Le Mars, Iowa, as the evidence shows he is now engaged."

This additional quotation from the decree of the trial court is of interest:

"The defendant, to establish his contentions, relies in part upon a certain statement, or notice of discharge, which is in writing, and which has been introduced in the record in this case as 'Exhibit 1'. This written notice was requested by the defendant, at, or shortly after, he was notified by the business manager of the Le Mars Clinic that his services were to be discontinued. It will be noted that 'Exhibit 1' contains the following clause, to wit: 'except as to definite period of employment'. The record in this case is entirely devoid of any evidence to the effect, that when the defendant received said 'Exhibit 1', he made any objection, or remonstrance, to the inclusion therein of the provision above quoted. It seems to the Court that, if the quoted clause was not in accordance with the facts, the defendant would have promptly objected to the inclusion of such statement in the said notice of discharge, 'Exhibit 1'; but as heretofore stated, the record herein is entirely mute in this respect."

In keeping with the conclusions indicated by the foregoing

the trial court granted the injunction prayed for. In so doing it was right, unless the rules of law applicable to such contracts in this state demand a different result.

We have examined the cases at great length and have reached the conclusion that no error was committed in entering the decree. Oates v. Leonard, 191 Iowa 1004, 183 N. W. 462, announced our view that a contract whereby one sells his business with the undertaking not to engage in a certain business or in a given locality for ten years is valid. Cole v. Edwards, 93 Iowa 477, 61 N. W. 940, announces the doctrine that the validity of a contract by a physician to refrain from practice within a reasonable time and certain locality is no longer an open question. In Rowe v. Toon, 185 Iowa 848, 169 N. W. 38, a contract by a physician to refrain from practice for ten years within the county was sustained. It was likewise held in that decision that the burden of proof that such a contract is contrary to public policy is upon him who asserts it. The number of cases upon this general proposition is so large that it would be utterly impossible, as well as unnecessary, to quote from or examine more than a small part of them; but see, Proctor v. Hansel (a case upon which both parties rely), 205 Iowa 542, 218 N. W. 255, 58 A. L. R. 153, and note at p. 157, and supplemental note in 1936 A. L. R. Blue Book. The A. L. R. annotator has this, among other things, to say, at p. 162 of the cited volume:

"It is a firmly established doctrine that a member of one of the learned professions, upon becoming assistant to another member thereof, may, upon a sufficient consideration, bind himself not to engage in the practice of his profession upon the termination of his contract of employment, within a reasonable territorial extent, as such an agreement is not in restraint of trade or against public policy. Such contracts have been held valid where made by physicians, surgeons, and others of the healing profession."

And again, at p. 171 of 58 A. L. R.:

"As appears incidentally, the majority of the cases cited in the previous decisions held or assumed, without particular discussion of the question as to remedy, that injunction is proper remedy for breach of this class of agreements.

"Equitable aid is given on the ground that, for the breach of such covenants, there is no adequate remedy at law, since the breach is a continuing one, and damages commensurate to the injury are not usually recoverable."

6 Ruling Case Law, Title "Contracts", sec. 206, p. 805, has this to say upon the subject:

"A contract which does not deprive the public of the industry of the person restricted, and which simply enlists such person's services as an agent or employee of the other party to the contract, is not unreasonable as being in restraint of trade, notwithstanding the fact that it requires the agent to abandon the business in which he was previously engaged. At least where the character of the business and the nature of the employment are such that the employer requires such protection, an agreement by an employee not to engage in business in competition with the employer after the termination of the employment, is valid if it is reasonable under the circumstances. As it is lawful and proper to protect a business about to be acquired, from certain acts by the seller, who is familiar with such business, it is equally lawful and proper to protect an established business from such acts by one who has become familiar therewith."

Again, in the same section:

"If the restrictions are not otherwise contrary to public policy, they must be held to be valid when they appear to be reasonably necessary for the fair protection of the employer's business or rights, and do not unreasonably restrict the rights of the employee, due regard being had to the subject-matter of the contract, and the circumstances and conditions under which it is to be performed. This rule seems to be especially applicable to agreements by assistants to professional men. Such agreements enable the employer to instruct his assistant without fear of afterwards having a rival. Few professional men would take assistants and intrust them with their business, impart to them their knowledge and skill, bring them in contact with their clients and patients, unless they were assured that the knowledge and skill imparted and the friendships and associations formed would not be used, when the services were ended, to appropriate the very business such assistants were employed to maintain and enlarge."

See, also, Freudenthal v. Espey, 45 Colo. 488, 102 P. 280, 26 L. R. A. (N. S.) 961; note to Samuel Stores v. Abrams, 9 A. L. R. 1450, beginning at p. 1456, and more particularly at p. 1472.

■■■ One of the contentions made by the defendant is that the indefinite period of extension of the contract made it invalid. This, once an open question, seems now to have been fully settled. See 6 Ruling Case Law, Title "Contracts", sec. 206, p. 807, and the authorities there cited.

■■■ Among the contentions of the defendant not covered by the foregoing is the claim that:

"The original co-partnership, which was the employer of the defendant in the original written contract, Exhibit D, by the retirement of one of its co-partners, W. T. Shepard, and the taking in of a new partner, L. C. O'Toole, has become dissolved by operation of law, and the present new firm not being a party to the original contract is not entitled to maintain this action thereon."

Without going into the matter of whether this contention would have been sound if timely made, it is sufficient to say that the defendant was not in a position to raise it after having operated under the new partnership the full time of the written contract and the extended period thereof. No contention of this sort was suggested by him and he continued his work and accepted pay according to the understanding of the parties. It is too late to raise it now.

There is much discussion in the record with reference to whether or not the statute of frauds applies to the situation under investigation. As we see it the statute of frauds is not involved under the record, and we pass that without further discussion.

Other contentions are woven through the argument of defendant, but they have been disposed of in their essence by what has gone before.

It follows that, having found no error in the decree of the trial court, its action should be and it is affirmed.—Affirmed.

STIGER, C. J., and KINTZINGER, RICHARDS, HAMILTON, and MILLER, JJ., concur.