COGLEY CLINIC, a partnership, appellee, v. H. F. MARTINI, appellant.

No. 50420.

542

January 9, 1962.

Rehearing Denied February 5, 1962.

Porter & Heithoff and James A. Pratt, all of Council Bluffs, for appellant.

Smith, Peterson, Beckman & Willson, of Council Bluffs, for appellee.

Snell, J.—This is an action in equity to enjoin the violation of the restrictive covenant in a contract of employment.

Plaintiff, Cogley Clinic, is a partnership. Its members are physicians and surgeons associated together for the practice of their profession in Council Bluffs and surrounding territory.

The partnership was first formed in 1927 with four doctors. Through changes in personnel, 29 doctors have been associated with the partnership. There are now 12 partners, two associates (doctors), a business administrator and 30 employees, including nurses, technicians, clerks, etc. The doctors include among their number specialists in their respective fields. They have an extensive medical practice and draw patients from a radius of 100 to 125 miles. They have about 50,000 patients. About 30,000 of the patients live within 25 miles of Council Bluffs. Because of the large number of doctors associated together, the partnership uses the name "Cogley Clinic." For convenience it will be referred to as the clinic.

The clinic enjoys a substantial referral business from doctors outside of Council Bluffs. There is practically no referral business from other doctors in Council Bluffs. Including Omaha, Nebraska, and Council Bluffs, Iowa, 450,000 people live within 25 miles of Council Bluffs.

Prior to 1952 there were no restrictions limiting the prac-

tice of a doctor who withdrew from the clinic. Some doctors, who had been brought in and established by plaintiff-partnership, withdrew and engaged in practice in Council Bluffs in direct competition with the clinic. Patients followed the withdrawing partners and the remaining doctors suffered substantial loss of patronage and income. To bring in a new doctor to fill a vacancy on the staff and get him established is expensive. The estimated cost to the clinic is $10,000. It is usually about two years before his work produces income equal to his cost to the clinic.

In 1953 a contract between the partners, including associates, was introduced. The contract set forth the agreement of partnership or employment, and among the provisions was a restrictive covenant effective upon the withdrawal of a partner or termination of employment.

Dr. H. F. Martini is a doctor licensed to practice in Iowa and Wisconsin. He has had special training and specializes in orthopedic surgery. He has passed some of the examinations but is not certified by the American Board of Orthopedic Surgery. The evidence in this case indicates without dispute that he is a competent orthopedic surgeon.

In 1953 plaintiff did not have among its doctors an orthopedic surgeon. The specialist in that field who had been a partner had withdrawn before the introduction of the restrictive covenant and was in private practice in Council Bluffs. He is now deceased.

Doctor Martini, at that time a total stranger to the Council Bluffs area, came to the clinic as an employee in October 1953. He became a partner in January 1956. Membership as a partner terminated in October 1959 when he again became an employee. Doctor Martini's entire acquaintance with patients, referral doctors, hospital personnel and local procedures prior to the termination of his employment was through his association with the clinic. For reasons not material to this action, except as noted below, his employment was terminated in February 1960. On each employment he signed a contract containing the following covenant:

"D. Not to engage, on the termination for any cause whatsoever of the employment hereunder, in the practice of medicine or surgery or any of the healing arts, or engage to work for any individual, firm, partnership or association engaged in the practice of medicine or surgery or any of the healing arts, in the City of Council Bluffs, Iowa, or within a radius of twenty-five (25) miles thereof, for a period of three (3) years from the time the employment under this Contract ceases."

When Doctor Martini came to the clinic in 1953 he was introduced professionally and socially and his association with the clinic was announced to the public, patients of the clinic and to doctors in the territory. All of the medical files and records of the clinic were available to him. He was the only member of the clinic specializing in orthopedic surgery, although others did traumatic surgery. It appears that patients of an orthopedic surgeon are largely patients referred by other attending physicians. Doctor Martini cared for such patients referred by members of the clinic staff and outside doctors. There was very little referral work from other doctors in Council Bluffs.

At the present time, other than Doctor Martini and several in Omaha, there is no orthopedic specialist closer than about 100 miles. Several orthopedic surgeons in Omaha are available to the Council Bluffs area. They have been doing orthopedic work in Council Bluffs for many years and are available on call. They are not far away. While Doctor Martini was associated with the clinic, the Omaha orthopedic surgeons took care of the referred work of Council Bluffs doctors not associated with the clinic. While the clinic has no orthopedic surgeon on the staff, Omaha doctors are called in for necessary cases.

One of the reasons for the termination of Doctor Martini's employment by the clinic was the complaint of other doctors about his failure to see patients and answer calls and his unavailability when needed. He was frequently not as available as doctors from Omaha. Inconvenience and annoyance resulted.

It was the opinion of all witnesses that the location of one or two orthopedic surgeons in Council Bluffs would be desirable

and convenient. The clinic is seeking such an associate. The members of plaintiff-partnership deny that they desire any monopoly in the medical and surgical field. The record in this case shows that the lack of resident orthopedic surgeons in Council Bluffs is inconvenient but it does not show that the public welfare necessarily depends on Doctor Martini's practice in Council Bluffs.

On July 9 and 10, 1960, Doctor Martini caused to be published in a daily paper in Council Bluffs an announcement as follows: "DR. H. F. MARTINI announces the opening of his office, for the practice of orthopedic surgery, in the City National Bank Bldg.—Adv."

This action for a restraining injunction followed. Doctor Martini admits that he has been engaged in the practice of medicine and surgery.

The trial court found for plaintiff and enjoined defendant under the provisions of his contract. We agree with the trial court.

I. In this appeal defendant challenges the reasonableness of the restrictive covenant. Defendant contends that there is no social economic justification for the restriction, that it is greater than required for protection of plaintiff; that the restriction imposes an undue hardship upon defendant; that it tends to create a monopoly; that it unreasonably restricts the use of defendant's skills; that it is injurious to the public; and that it is unreasonable as to time and area.

II. The defendant does not seriously challenge the legality of restrictive covenants in general. Restrictive covenants of employment are strictly construed against one seeking injunctive relief. They are in partial restraint of trade and are approved with some reluctance. Under certain circumstances they are recognized and enforced by injunctive proceedings. For many years restrictive covenants between doctors have been recognized as valid and enforceable. Rowe v. Toon, 185 Iowa 848, 169 N.W. 38; Oates v. Leonard, 191 Iowa 1004, 183 N.W. 462.

. ▆ What is frequently called a landmark case in the area of restrictive covenants is Brecher v. Brown, 235 Iowa 627, 17 N.W.2d 377. The opinion in that case discusses the history and development of the law. The rule was affirmed that a contract in restraint of trade is to be gauged by the reasonableness of the restraint imposed as necessary to the protection of the covenantee and compatible with the public interest. There the restrictive covenant was between doctors of veterinary medicine and surgery. The contract provided for an area limitation with a radius of 25 miles. It was unlimited as to time. It was pointed out that the area was such that it could not possibly be served by plaintiff. The restriction was held to be unreasonable. In considering "the difficult task of applying general rules to the specific facts" the court referred to rigid formulas as "helpful in appraising the elusive quality of reasonableness," but not controlling. Mutual Loan Co. v. Pierce, 245 Iowa 1051, 1055, 65 N.W.2d 405, 407, after referring to Brecher v. Brown, supra, says: "It comes down to a question of reasonableness. The restraint will be enforced if reasonably necessary to afford a fair protection to the business interests of the party in favor of whom it is given. It is to be strictly construed and the restriction must be no greater than necessary to protect the interests of the employer. It must not be oppressive to the employee or create undue hardship on him, out of proportion to the benefits which the employer may in reason expect to secure. * * *." It should be remembered that the territory that can be served by a veterinarian with a country practice is not comparable to the territory that can be served by a medical clinic or an orthopedic specialist.

Our most recent pronouncement is in Federated Mutual Implement and Hardware Ins. Co. v. Erickson, 252 Iowa 1208, 1213, 110 N.W.2d 264, 267. There the contract was attacked as violative of public policy. The authorities were reviewed and cited. It was held that four factors are involved: size of the restricted area; the time element; the type of service performed by the covenantor; and the reasonableness of the situation, as applied to the facts of each case. In the cited case we quoted

with approval from Larsen v. Burroughs, 224 Iowa 740, 277 N.W. 463, as follows: " 'The privilege of a duly licensed physician to practice his chosen profession when and where he may wish is a right which the courts will zealously protect, but it is also a privilege which, by valid, voluntary contract, the physician may restrict; providing that such contractual restrictions are reasonable, and not contrary to public policy.' "

The restricted period was 10 years. The injunction was granted.

In McMurray v. Faust, 224 Iowa 50, 276 N.W. 95, also a case involving doctors, the restricted time was five years. The restriction was approved.

■ In these days of good roads, rapid transportation and an expanding perimeter for business and professional influence, 25 miles is not far for a client or patient to go to see a professional man of his choice. In the case before us, plaintiff draws patients over an area of 100 miles. The clinic has 30,000 patients within 25 miles. Under the facts shown, a 25-mile limitation is reasonable.

A three-year period of time is reasonable. See cases cited, supra.

III. The record shows that in the past the clinic has suffered financial loss when partners with a personal following withdrew. Except for the clinic's investment in previous promotion of Doctor Martini's professional recognition in the community, there is very little evidence of loss caused by his present competition. There is no showing that in the six-month period between the opening of Doctor Martini's office and the trial of this case in district court there was any exodus of patients from the clinic to defendant's office. We do not consider this too important nor the basis for determination of the issues. There are too many intangibles and variable contingencies in a situation such as we have here to have the case decided on whether there has been a gain or loss of income in the first six months of the contract violation.

■ A court of equity will not grant injunctive relief unless there is an invasion or threatened invasion of a right and a

substantial injury will result or such injury is reasonably to be apprehended. The burden is on one who asks relief to prove these elements. Schmitt v. Kirkpatrick, 245 Iowa 971, 63 N.W.2d 228.

The record is clear that in the past eight years substantial loss to the clinic has followed withdrawal of and subsequent competition by former members. Doctor Martini was introduced, sponsored and recommended in Council Bluffs by plaintiff for about seven years. Loss to plaintiff from his present competition may reasonably be apprehended. It is not necessary for plaintiff to prove specific items or amount of damage. Such a requirement would render restrictive covenants in the professional field almost useless.

IV.   Defendant argues that a contract in restraint of employment which gives greater protection to the employer than is required is unreasonable. With that general statement of the law we agree, but we do not agree that the contract before us is unreasonable.

V.   Defendant argues that contracts imposing undue hardship are not enforceable. Under the facts in this case this argument loses its vitality. In 1953, again in 1956, and again in 1959, Doctor Martini agreed to the restrictive covenant. He is a mature, highly educated man. There was no coercion or concealment. He was not misled. As far as his contract is concerned he may practice his profession anywhere except within 25 miles of Council Bluffs. We cannot say that the withdrawal from his field of opportunity of one area with a radius of 25 miles for three years is so unduly harsh that we should place the stamp of judicial approval upon his open violation of a solemn agreement. As our court has frequently said, we do not desire to encourage parties generally in ignoring contracts fairly entered into.

VI.   A contract in restraint of employment which is injurious to the rights of the general public is unreasonable and not enforceable.

Here there is no showing that the rights of the public are in danger. The public has no vested right to the services of

Doctor Martini. He has always had the right to retire or move from the community. No one could legally complain if he did. He agreed in writing to refrain from practice within 25 miles of Council Bluffs for three years. There are over 60 doctors in Council Bluffs and over 400 in Omaha, including specialists in orthopedic surgery. The public welfare is not seriously involved in this case.

VII.   With over 460 doctors residing in Council Bluffs and Omaha (446 outside of plaintiff-clinic), it cannot be seriously contended that the 12 partners in the plaintiff-partnership have a monopoly in their profession.

VIII.   The burden of proof that a contract is contrary to public policy is upon him who asserts it. Larsen v. Burroughs, supra. Defendant has failed to prove any violation of public policy.

A note in 58 A. L. R. on page 162 has this to say: "It is a firmly established doctrine that a member of one of the learned professions, upon becoming assistant to another member thereof, may, upon a sufficient consideration, bind himself not to engage in the practice of his profession upon the termination of his contract of employment, within a reasonable territorial extent, as such an agreement is not in restraint of trade or against public policy. Such contracts have been held valid where made by physicians, surgeons, and others of the healing profession."

We find from a study of the entire record that plaintiff has met the burden of proof necessary for injunctive relief.

The stay order heretofore entered in this case is vacated and the decree of the trial court is affirmed.—Affirmed.

GARFIELD, C. J., and THOMPSON, OLIVER and THORNTON, JJ., concur.

HAYS and LARSON, JJ., dissent.

PETERSON, J., takes no part.

BLISS, J., not sitting.

HAYS, J.—I respectfully dissent.

As I view this case, the single issue is whether or not equity, through means of injunctive relief, should enforce the restrictive covenant in the contract of employment entered into by plaintiff and defendant. This in turn reduces the issue to whether or not the covenant is fair and reasonably necessary for the protection of the covenantor who seeks the injunctive relief.

That the covenant in question is in fact one for the partial restraint of trade is so recognized by all authorities but will be enforced if such restraint is reasonable, that is—if it only affords a fair protection to the interests of the party in favor of whom it is given and not so large as to interfere with the interests of the public, or impose undue hardship on the person restricted. 17 C. J. S., Contracts, sections 246, 247 and 254; Restatement of the Law, Contracts, section 515; Annotation, 43 A. L. R.2d 94, 116; Brecher v. Brown, 235 Iowa 627, 17 N.W.2d 377; Mutual Loan Co. v. Pierce, 245 Iowa 1051, 65 N.W.2d 405; Federated Mutual Implement and Hardware Ins. Co. v. Erickson, 252 Iowa 1208, 110 N.W.2d 264.

The burden of establishing reasonableness is upon the party seeking to enforce the covenant, he not being per se entitled to its enforcement. Mutual Loan Co. v. Pierce, supra, and should be strictly construed against the one seeking relief in equity. In Division VIII of the majority opinion, it is said that "the burden of proof that a contract is contrary to public policy is upon him who asserts it", and then states that the defendant has not carried such burden. It cites Larsen v. Burroughs, 224 Iowa 740, 277 N.W. 463. In that case the case of Rowe v. Toon, 185 Iowa 848, 169 N.W. 38, is cited as authority for the statement. At pages 852 and 853 of 185 Iowa, it is said:

"That equity will refuse its aid to enforce a clearly unreasonable or oppressive contract of this nature may be admitted, but there is nothing upon the face of this particular agreement indicating that it is unreasonable or inequitable in any respect. * * *. The contract sued upon not being unreasonable on its face, plaintiff was not required to negative the existence of possible conditions rendering it void or voidable. * * *."

In effect, it says such covenants are per se valid with the burden being upon the defendant to show illegality, i.e., unreasonableness, as reasonable or unreasonable is the yardstick by which the legality is to be determined. It is difficult for me to reconcile such reasoning with our later expression in Mutual Loan Co. v. Pierce, 245 Iowa 1051, 1056, 65 N.W.2d 405, 408, supra, which is that "The covenantor who seeks the enforcing injunction in equity has the burden of showing the restrictive covenant is fair and reasonably necessary for the protection of his business."

The majority opinion recognizes that the element of space and time are important upon the question of reasonableness, and I agree. It finds that a three-year restriction is reasonable and with this I agree. It states that under the facts shown, a 25-mile limitation is reasonable. When it is said *under the facts shown*, such a limitation is reasonable, I cannot agree. It is true there are many instances where a 25-mile radius has been reasonable but the majority opinion chooses to overlook the fact that this particular 25-mile radius includes all of the cities of Omaha, Nebraska, and Council Bluffs, Iowa, also a part of Harrison County, Mills County and a greater part of Pottawattamie County in Iowa, and a part of Sarpy County, Washington County and Douglas County in Nebraska and embraces some 450,000 persons residing therein. I am unable to brush aside this population question by merely saying, as does the majority opinion in Division IV, that "we do not agree that the contract before us is unreasonable." As is stated in Restatement, Contracts, section 515(a), "A restraint of trade is unreasonable * * * if it is greater than is required for the protection of the person for whose benefit the restraint is imposed." Under Mutual Loan Co. v. Pierce, supra, this is the Clinic's burden and, in my opinion, even a cursory examination of the record shows a failure to carry such burden.

Defendant is an orthopedic surgeon. He was such when he joined the Clinic and no period of training was needed. As stated by Dr. J. P. Cogley, "he had all of the qualifications of an orthopedic surgeon before he came to work at Cogley Clinic."

In this respect, at least, the case of Larsen v. Burroughs, supra, is distinguishable. It is stated in the record that with the departure of Doctor Martini from the Clinic, they suffered a financial loss of $21,000 that could be placed at the hands of the orthopedic department. Assuming this *was* due to his departure rather· than *could be* attributed thereto, this has nothing to do with Doctor Martini operating separately. It does not appear what money came to the Clinic because of Doctor Martini and this is not an action to require him to remain with it. Such testimony merely shows that after Doctor Martini left, the pay for an orthopedic surgeon went to Omaha surgeons who were called into the case instead of to the Clinic. It was the same as it was before Doctor Martini was employed.

What effect upon the Clinic has resulted from Doctor Martini opening his own office in Council Bluffs? Robert J. Prichard, business administrator of the Clinic, stated "As a result of Doctor Martini leaving we have lost no accounts to date." Dr. Eugene B. Floersch, a member of the Clinic, stated "I believe we have actually gained some patients since he [Doctor Martini] left the Clinic." Doctor Cogley stated "The same doctors that did refer business to our Clinic are still referring business to our Clinic." Doctor Martini states that his business is such as is referred by a patient's attending physician, and as to this there appears to be no dispute in the record, and that with one exception, he has no referral cases that previously would go to the Clinic. There is not one instance shown in the record where Doctor Martini used or called for Clinical records from the Clinic. While I do not imply that specific damage must be shown before equity will enforce a contract of this type, I do say that a showing of no injury *due to anything other than his leaving the Clinic,* such as appears in this record, has a strong bearing upon whether such restriction calls for more than is reasonably necessary to protect the Clinic's interests. Also having material bearing upon the question are the 450,000 persons residing in the restricted area. Other than Doctor Martini there is no orthopedic surgeon in Council Bluffs, a city of 55,000 people, and, on the Iowa side of the Missouri River, none closer

than 100 miles except one at Red Oak, Iowa. There are five or six in Omaha, Nebraska, which has a population of 301,000. This means seven orthopedic surgeons to care for this area. The Clinic has some 50,000 patients coming from a radius in excess of the 25-mile restricted area, which leaves some 400,000 people with whom the Clinic has no contact. While not unreasonable in miles, I think it too clear to argue that, considering the population, it covers an area far beyond the capabilities of the Clinic to serve and is therefore unreasonable. See Brecher v. Brown, supra, 235 Iowa 627, 17 N.W.2d 377; Arthur Murray Dance Studios v. Witter (Ohio Com. Pl.), 105 N.E.2d 685; Tawney v. Mutual System of Maryland, 186 Md. 508, 47 A.2d 372.

Another factor stands out in this record which is overlooked in the majority opinion. In Mutual Loan Co. v. Pierce, 245 Iowa 1051, 1056, 65 N.W.2d 405, 408, supra, it is said, "Every man has a right to earn his livelihood * * * and his covenant not to follow a certain calling cannot be enforced by the covenantor as any sort of penalty." That is exactly what is being sought here.

Mr. Prichard, business administrator of the Clinic, states: "Cogley Clinic does not have an objection to any number of orthopedic surgeons that wish to come to Council Bluffs. The *sole purpose of this litigation* is to enforce a written contract entered with Doctor Martini and a restrictive covenant contained therein, and not to keep orthopedic surgeons from locating in Council Bluffs." (Italics added.)

Doctor Cogley stated: "There are none of our surgeons in our Clinic who are qualified orthopedic surgeons who would be able to do some of the things that Doctor Martini did when he was with us."

Comparing this area situation (25 miles) in this case, and bearing in mind the 450,000 people included therein, with such cases as McMurray v. Faust, 224 Iowa 50, 276 N.W. 95; Larsen v. Burroughs and Brecher v. Brown, both supra, is like comparing the dropping of a spoonful of lemonade into Lake Erie and a spoonful of arsenic in a half tumbler of water. In my

judgment this record shows such a restraint far beyond any reasonable anticipation of unfair competition as to require equity to refuse its aid by injunctive relief.

Two other factors are involved: Undue hardship upon Doctor Martini and depriving the public in this area of the services of a skilled professional man. A careful examination of this record can, in my judgment, lead but to one conclusion, the balance of the equities rests with Doctor Martini and the public.

In Brecher v. Brown, supra, it is said at page 633 of 235 Iowa: " 'Covenantees [in contracts of this character between employer and employee] desiring the maximum protection have no doubt a difficult task. When they fail, it is commonly because, like the dog in the fable, they grasp too much and so lose all.' "

Such is this case. I would reverse the decree of the trial court.

LARSON, J., joins in this dissent.