Chas. E. KUNZ, Sr., Appellant,

v.

J. BOCK, Appellee.

No. 53146.

Supreme Court of Iowa.

Dec. 10, 1968.

Rehearing Denied Feb. 11, 1969.

Harold C. Lounsberry, Davenport, for appellant.

Shorey, Plath & Carroll, by Edmund H. Carroll, Davenport, for appellee.

SNELL, Justice.

Plaintiff, the buyer of a business, seeks injunctive relief against competition by seller claiming violation of contract of sale.

Defendant was engaged in "Building Maintenance Business" in Davenport. In oral argument we were told that the work involved tuck-pointing. On April 28, 1965 defendant sold the business to plaintiff. The sale was by written contract. The pertinent parts of the contract material here were as follows:

"Seller sells to buyer all his right, title and interest in his Building Maintenance Business, including the good will thereof as a going concern, all equipment, tools and supplies and including a Chevrolet one-half ton truck, and also all contracts and engagements entered into by seller in regard to said business. * * *

"Seller agrees that he will not after the date of this contract, directly or indirectly engage in the business of building maintenance or any phase thereof, nor aid nor assist anyone else in such business, except as a salesman for buyer."

Paragraphs 5, 6, 7 and 8 of plaintiff's petition say:

"5. That the plaintiff has been informed, does believe, and consequently alleges that the defendant has since the date of the aforesaid contract been engaged in the business of building maintenance and that such activity was in violation of the terms of the aforesaid contract.

"6. That, by reason of the conduct of the defendant in engaging in the business of building maintenance contrary to and in violation of the terms of the aforesaid contract, this plaintiff has suffered great and irreparable damage.

"7. That unless restrained by an order of this court, the defendant will continue to engage in such business contrary to the terms of the aforesaid contract and the plaintiff will suffer further and greater irreparable damage.

"8. That the plaintiff has no plain, speedy and adequate remedy at law."

Defendant answered separately admitting paragraphs 1 through 5, inclusive, denying paragraph 8 and denying paragraphs 6 and 7 for lack of information or belief.

Defendant filed Motion for Judgment on the Pleadings alleging that the restrictions imposed were unreasonable and unenforceable being without limitation as to time or space.

Defendant's Motion for Judgment on the Pleadings was sustained.

Pursuant to permission to amend plaintiff by amendment alleged error of omission or inadvertence by the scrivener of the contract in omitting the limitation as to time and place that the seller would refrain from engaging in building maintenance business. Plaintiff asked that the "contract be reformed to conform to the true intent of the parties by adding to paragraph 3 thereof the following: 'During the Seller's lifetime and in the States of Iowa and Illinois.' "

Plaintiff also asked that in the event the contract, either as reformed or as originally drafted, is unenforceable plaintiff be granted rescission, return of his money and damages.

Defendant filed Motion to Strike and Dismiss. The pertinent parts of the court's ruling were as follows:

"4. The Motion to Dismiss is sustained as to Paragraph 4 on the ground that the contract, if reformed as requested by plaintiff, would be an unreasonable and illegal restraint of trade unnecessary to protect plaintiff and incompatible with public interest, for all of the same reasons set forth in this court's ruling of September 28, 1967. The contract is still unlimited as to time, and the area, covering as it does two complete states, including the City of Chicago and many other large cities of Illinois and Iowa, is so large as to be unreasonable.

"5. The Motion to Dismiss as to Paragraph 5 is sustained for the reason that the restrictive provision of the contract is illegal and void and defendant cannot be said to repudiate the contract by his refusal to observe said void provision. It needs no citation of authority to sustain the proposition that defendant has no duty to perform a void provision of the contract. There is no provision in the contract making the contract void or voidable in the event any provision thereof is void.

"6. The Motion to Dismiss as to Paragraph 6 is sustained for the following reasons:

"(1) Division IV alleges an actual and positive fraud and deceit but no allegation is made that at the time of commiting the acts alleged to constitute fraud and deceit plaintiff intended to engage in the restricted activities.

"It is necessary that he have such intention; otherwise there is no fraud. Lamasters vs. Springer, 251 Iowa 69, 99 N.W.2d 300, and cases therein cited."

Plaintiff has appealed. We affirm.

I. Actions to enforce restrictive covenants have been numerous and much has been written thereon. In Baker v. Starkey, 259 Iowa 480, 492, 144 N.W.2d 889 we quoted from Arthur Murray Dance Studios of Cleveland v. Witter, Ohio Com.Pl., 105 N.E.2d 685 at 687 as follows:

"This is not one of those questions on which the legal researcher cannot find enough to quench his thirst. To the contrary there is so much authority it drowns him."

An attempt to review all of the authorities even in our own state would serve no useful purpose. We will mention only a few.

In Swigert v. Tilden, 121 Iowa 650, 660, 97 N.W. 82, 85, 63 L.R.A. 608, decided in 1903, this appears:

"Now whether a contract is reasonable in respect of the length of time during which the restriction is to run, and in respect of the scope of territory which is to be covered thereby, as applied to a case

like the one before us, it would seem that the fair and full protection of the business and good will which the vendee has purchased and paid for may well be accepted as the test. Certainly the restriction ought not to be wider in the scope of its operation, and there can be no good reason for confining it to any narrower limits. It follows naturally that each case must be governed in the main by its own facts."

In Sickles v. Lauman, 185 Iowa 37, 45, 169 N.W. 670, 673, 4 A.L.R. 1073, decided in 1918, this appears:

"In discussion, courts sometimes indulge in the loose generality that the law does not favor contracts in restraint of trade, and therefore, an agreement by which a party undertakes not to render a specific business in a specified city or town will be strictly construed. What the law does disfavor are contracts which unreasonably restrict the individual in his liberty of occupation and employment. But there is no public policy or rule of law which condemns or holds in disfavor a fair and reasonable agreement of this character, and such a contract is entitled to the same reasonable construction and the same effective enforcement that are accorded to business obligations in general."

Haggin v. Derby, 209 Iowa 939, 229 N.W. 257, decided in 1930, involved a contract for dissolution of a partnership. The vendor (retiring partner) agreed that he would not sell or offer for sale furniture so long as the vendee is in business in a named town having a population of about 1200. It was held that the agreement as to time was not unreasonable and was not unlimited as to scope of territory and included the trade territory adjacent thereto *as intended by the parties.* (Emphasis added)

Brecher v. Brown, 235 Iowa 627, 17 N.W.2d 377, decided in 1945, has frequently been called a "land mark" case. By written agreement plaintiff employed defendant as a veterinary assistant. The contract provided that upon termination of the employment defendant would not engage in the practice of veterinary medicine or surgery or any competing business within a radius of twenty-five miles of Storm Lake without the express written consent of plaintiff. After about nine months defendant quit his employment and opened his own office about 100 feet from plaintiff's. Plaintiff sought to enjoin defendant " 'from the practice of veterinary medicine and surgery * * * and the operation of a veterinary hospital at Storm Lake, Iowa.' " The trial court denied the relief asked. Plaintiff appealed and the case was affirmed.

It was held that the restriction was not reasonably limited to the protection of appellant's interests and by the same token, would impose undue hardship upon appellee and was against public policy. We said: "We are not at liberty to write a new contract for the parties or to modify the one they wrote. It must be upheld as written or rejected." (loc. cit. 633 of 235 Iowa, loc. cit. 380 of 17 N.W.2d)

It was not a question of construction as in Haggin v. Derby, supra, or Nelson v. Leaders, infra.

Nelson v. Leaders, 258 Iowa 919, 140 N.W.2d 921, decided in March 1966 involved a restrictive covenant against engaging in similar farm equipment business. Plaintiffs and defendant had first been partners and later, upon incorporation of the business, shareholders in an International Dealership in Council Bluffs. Their contract (between themselves) provided that in the event any of the contracting parties should cease to be an officer or director of the corporation he would not engage in a similar business for 10 years within a radius of 40 miles from Council Bluffs. Defendant retired from the corporation and became a partner in a similar business in Dunlap, about 50 highway miles and 45 air miles from Council Bluffs. We held defendant was not entitled to urge the invalidity of the restrictive covenant as a defense because he had failed to plead it in conformity with rules 72, 101 and 103, Rules of Civil Procedure. (258 Iowa loc.

cit. 923, 140 N.W.2d 921)  The trial court's construction of the covenant was then approved and enforcement decreed.

Baker v. Starkey, supra, decided September 20, 1966, involved an employment contract for unique and specialized services to the medical and dental professions.  The contract provided that if employment was terminated the employee would not compete in any town or city in the continental United States in which the employer was rendering services to clients at the time of termination of employment for a period of three years.  The area included "virtually every important population center in Iowa, a number of the more populous cities in Illinois outside of the Chicago area, most of the population centers of Minnesota other than Rochester and Duluth, and most or all of the main population centers of Missouri, Kansas and Nebraska.  In addition it includes the largest population centers of Arizona, and one of the two largest in Oklahoma together with small towns in North Dakota and Wisconsin."  (259 Iowa loc. cit. 487–488, 144 N.W.2d loc. cit. 893)

It was held that as to time the provision was reasonable but as to area it was unreasonable and illegal.

In that case we were urged to adopt what plaintiffs called "the better rule" asserting a modern tendency to enforce unreasonable restrictions to the extent reasonable under the circumstances.  We analyzed the many judicial pronouncements and the statements of such respectable authorities as Professors Corbin and Williston and Restatement, Contracts.

We recognized that the rule of partial enforcement of indivisible promises would be a departure from our prior position.  In speaking of employment contracts, we said:

"However, we do not believe the approach suggested, meritorious as it may be under appropriate circumstances, should be applied in the present case.  The validity of the contract in each case must be determined on its own facts and a reasonable balance must be maintained between the interest of the employer and the employee.

"It is important to note that courts recognize a distinction between restrictive covenants as they relate to the ordinary commercial transaction involving business or property transfers and those which relate to employment contracts entered into by wage earners.  A different measure of reasonableness is used."  (loc. cit. 495 of 259 Iowa, loc. cit. 898 of 144 N.W.2d)

We are not prepared to say that there can be no circumstances under which partial enforcement should be decreed or a contract reformed to express the true agreement but the case at bar does not present such a case.

II.  Plaintiff argues that a substantial part of the consideration paid under the contract was for the good will of the business.  What the value of the specific items of property transferred might have been does not appear.  Defendant's sale included "the good will thereof as a going concern" and "all contracts and engagements" in regard to the business.  That there was consideration for sale of good will is not denied.

■  The good will of a business is an asset entitled to protection to the extent that is reasonable.

■  The contract involved here had no limitations whatsoever as to either time or area.  A literal interpretation thereof would include the entire world.  An attempted enforcement of the contract as written would, of course, be an absurdity.

■  Plaintiff's counsel obviously recognized the situation and amended.  The amendment was to conform to the intent of the parties and would restrict defendant during his lifetime "and in the States of Iowa and Illinois."  Counsel made a valiant effort and did the best he could with the facts he alleged but even if the contract should be reformed as prayed the re-

strictions would still be entirely too broad, unreasonable and illegal. The territory would include everything from the lakeshore at Chicago west to the Missouri river at Sioux City and Council Bluffs. In Illinois it would extend south to Kentucky. The territory would include 423 incorporated cities and towns and about 13 million people. A contract expressing such an intent for a building maintenance business would be unenforceable.

This is not a case of construction of a contract or interpretation in the light of circumstances surrounding its execution. The contract is not divisible. There is no good part to separate from the bad. To give plaintiff injunctive relief we would be required to first write a new contract for the parties. That we are not authorized to do.

For discussion of the trends in the field of enforceability of restrictive covenants see 17 C.J.S. Contracts §§ 242, 243, 245, 246, and 247.

III. In paragraph 6, Division II of plaintiff's amendment to petition, plaintiff alleged:

"That the seller at the time of executing the aforesaid contract was in failing health and represented to the buyer that he did not intend to engage in the business of building maintenance during the remainder of his lifetime."

In paragraph 6, Division III, plaintiff alleged:

"That by reason of the conduct of the defendant in engaging in the business of building maintenance contrary to and in violation of the terms of the aforesaid contract, the said defendant has repudiated the said contract."

In paragraph 8, Division IV, plaintiff alleged:

"That the defendant well knew that the provision of the said contract not to compete was a material and inseparable part of the said contract and knowing the same to be unenforceable by fraud and deceit induced the plaintiff to enter into the said contract."

Plaintiff sought return of his purchase price money and damages.

There is no claim that any representation or statement by defendant was false when made. There is no claim that at the time of sale defendant's intent was other than claimed in paragraph 6, Division II, quoted supra. There is no claim of any specific overt act by defendant or anything done pursuant to an intent existing at the time of the contract. Plaintiff merely alleges that he has been informed and believes that since the date of the contract defendant has engaged in building maintenance business. Plaintiff asks that defendant disclose his records and activities.

In Syester v. Banta, 257 Iowa 613, 625, 133 N.W.2d 666, 674, we said:

"In an action based upon fraud, certain universally recognized elements must be alleged and shown, and the failure to establish any one or more of such elements is fatal to such action."

In Lynch v. Kerslake, 186 Iowa 983, 987, 173 N.W. 147, 149, we said:

"The things which constitute the fraud relied on must be substantially set out in the pleading, whether it be the petition or answer."

In New York Life Insurance Company v. Clemens, 230 Iowa 279, 286, 297 N.W. 253, 257, it is said: "It is also the general rule in pleading fraud that the specific facts relied upon should be alleged. [Citations]" We were considering a motion for more specific statement. In the case at bar we have a motion to dismiss. However, here plaintiff has amended once by adding three new divisions. We assume he stated the best case possible under available facts. After the trial court's second ruling plaintiff made no further effort to amend or improve his case. It is our duty

to determine the sufficiency of his position as presented.

In Hall v. Wright, Iowa, 156 N.W.2d 661, 666, we said:

"We are here concerned with the sufficiency of the evidence to sustain a plaintiff's verdict on the issue of actionable fraud. This cannot be presumed but the essential elements thereof must be affirmatively proved by the one who relies on it either for the purpose of defense or attack. [Citations] Each and every one of the following elements must be established by a preponderance of the evidence that is clear, satisfactory and convincing—such as to overcome the presumption in favor of fair dealing: (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, (7) resulting injury and damage. [Citations]"

In the case before us the allegations are insufficient to support a claim of actionable fraud. Assuming the facts alleged to be true they are insufficient to support a finding of fraud.

IV. In paragraph 8, Division IV of his amended petition, quoted in Division III, supra, plaintiff states, by inference, that defendant knew the contract was unenforceable and by fraud and deceit induced plaintiff to enter into the contract. There is no claim that defendant ever made any representations about the enforceability of such a contract. There is no claim of any fiduciary relationship or particular trust placed in defendant's knowledge of the law. There is no claim that defendant had any greater opportunity than plaintiff to learn or be advised as to the law.

37 C.J.S. Fraud § 55, states the general rule:

"The general rule is that a misrepresentation as to a matter of domestic law will not constitute remediable fraud; but the rule is subject to exceptions, as where there is a relation of trust and confidence between the parties, or where the person making the representation takes advantage of his superior knowledge of the law.

"It is a generally accepted principle that a misrepresentation as to a matter of law or that a concealment as to a matter of law will not constitute remediable fraud, even though such misrepresentation is believed and acted on. Some authorities state, as the reason for the rule, that every one is presumed, or bound, to know the law and, therefore, cannot, in legal contemplation, be deceived by erroneous statements of law; but this reasoning has been criticized. By some decisions the rule is based on the ground that a statement of law is merely the expression of an opinion, and that the hearer has no right to rely on such a statement, since all parties have equal opportunity to find the law."

See also Commercial Savings Bank of Carroll v. Kietges, 206 Iowa 90, 96, 219 N. W. 44.

V. Fraud cannot be predicated upon the failure to perform a promise or stated intention to do something in the future, unless the statement is made with an existing real intention not to perform. Fraudulent intent may not be inferred merely from the fact of nonperformance. Lamasters v. Springer, 251 Iowa 69, 72, 99 N.W.2d 300 and cases cited therein.

The trial court was right.

The case is

Affirmed.

GARFIELD, C. J., and LARSON, MOORE, RAWLINGS, BECKER and LeGRAND, JJ., concur.

STUART and MASON, JJ., concur in the result.