**Gene M. EHLERS, Appellant,**

v.

**IOWA WAREHOUSE COMPANY,**
**Appellee.**

**No. 54628.**

Supreme Court of Iowa.

June 17, 1971.

Rehearing Denied Sept. 27, 1971.

Keith, Gallagher, Lybbert & Martin, Waterloo, for appellant.

Newman, Redfern, McKinley & Olsen, Cedar Falls, and Shuttleworth & Ingersoll, Cedar Rapids, for appellee.

STUART, Justice.

By this action in equity for a declaratory judgment, plaintiff sought to have two non-competitive covenants in his employment contract with defendant corporation declared void and unenforceable. Defendant counterclaimed for injunctive relief to prohibit plaintiff's violation of the covenants. The first covenant (paragraph 6 of the employment contract) prohibited plaintiff from disclosing his compiled list of defendant's customers to any third party or using it directly or indirectly in a competitive business after the termination of his employment. No time limit was stated. The second covenant prohibited plaintiff from engaging in a competitive business within 150 miles of defendant's business location in Waterloo for a period of two years.

The trial court found the first covenant was unreasonable because there was no time limit and concluded it could not be enforced. He found the second covenant was reasonable under the circumstances and enjoined employee "from violating the provisions of paragraph twelve of the contract of employment and he is more particularly enjoined from directly or indirectly engaging in, participating in, owning, managing, soliciting for, controlling, being employed by or connected with any truck leasing or rental business within a radius of one hundred fifty miles from the present location of defendant's business in Waterloo, Iowa, for the period ending on May 14, 1972".

While we recognize a distinction between a noncompetitive covenant in the sale of a business and one in an employment contract and because of countervailing policy considerations will not enforce the latter as freely, Baker v. Starkey (1966), 259 Iowa 480, 491, 144 N.W.2d 889, 895; Cogley Clinic v. Martini (1962), 253 Iowa 541, 546, 112 N.W.2d 678, 681; Mutual Loan Co. v. Pierce (1954), 245 Iowa 1051, 1055, 65 N.W.2d 405, 407; Brecher v. Brown (1945), 235 Iowa 627, 631, 17 N.W.2d 377, 379; see also Solari Industries, Inc. v. Malady (1970), 55 N.J. 571, 264 A.2d 53, 56; we will enforce such covenant if it is reasonably necessary for the protection of the employer's business and is not unreasonably restrictive of employee's rights nor prejudicial to the public interest. Baker v. Starkey, supra, 259 Iowa at 493, 144 N.W.2d at 897; Cogley Clinic v. Martini, supra; Mutual Loan Co. v. Pierce, supra.

On appeal plaintiff contends: (1) under Iowa law covenants in restraint of trade in employment contracts must stand or fall as written and the court cannot modify the agreement by separating the bad from the good and enforcing a reasonable part of the covenant even if the covenants are separately stated and are grammatically

severable; (2) enforcement of the covenant found in paragraph 12 should be denied in any event as it is unreasonable as to the area covered and the interest of defendant to be protected.

■ I. In view of the position we take here, it is unnecessary to discuss these propositions separately. We now overrule Brecher v. Brown (1945), 235 Iowa 627, 17 N.W.2d 377, and adopt the rule that unless the facts and circumstances indicate bad faith on the part of the employer, we will enforce noncompetitive covenants to the extent they are reasonably necessary to protect his legitimate interests without imposing undue hardship on the employee when the public interest is not adversely affected.

In Brecher v. Brown we held a covenant not to compete in the practice of veterinary medicine within a 25 mile radius of the employer's business after termination of the employment without a limit on time was not reasonably limited to the protection of appellant's interests and imposed undue hardship on appellee and consequently was against public policy. We refused to enforce the covenant to the extent deemed reasonable saying: "We are not at liberty to write a new contract for the parties or to modify the one they wrote. It must be upheld as written or rejected." We quoted from Samuel Stores, Inc. v. Abrams (1919), 94 Conn. 248, 108 A. 541, 9 A.L.R. 1450: "'Covenantees [in contracts of this character between employer and employee] desiring the maximum protection have, no doubt, a difficult task. When they fail, it is commonly because, like the dog in the fable, they grasp too much, and so lose all.'" 235 Iowa at 633, 17 N.W.2d at 380.

The overruling of a "landmark" case and the departure from a rule of such long standing requires substantial justification. We believe logic, equity and the modern authorities support the change in our position.

The rule stated in Brecher v. Brown has been considered the majority rule. 2 Restatement of Contracts, § 518, pp. 1004–1005. However, the increasing number of courts that are adopting the rule advocated by Williston and Corbin (6A Corbin on Contracts, §§ 1390, 1394; 5 Williston on Contracts (Rev.Ed.), §§ 1659, 1660) leaves this classification in doubt. Baker v. Starkey, supra, 259 Iowa at 492, 144 N.W.2d at 896. A partial list of these jurisdictions includes the following: Hill v. Central West Public Service Co. (5th Cir. 1930), 37 F.2d 451; Roane, Inc. v. Tweed (1952), 33 Del.Ch. 4, 89 A.2d 548, 41 A.L.R.2d 1; McQuown v. Lakeland Window Cleaning Co. (Fla.App.1962), 136 So. 2d 370; Metropolitan Ice Co. v. Ducas (1935), 291 Mass. 403, 196 N.E. 856; Redd Pest Control Company v. Heatherly (1963), 248 Miss. 34, 157 So.2d 133, 135–136; Solari Industries, Inc. v. Malady (1970), 55 N.J. 571, 264 A.2d 53, 56 (and citations); Igoe v. Atlas Ready-Mix Inc. (N.D.1965), 134 N.W.2d 511; Ramey v. Combined American Insurance Co. (Texas Civ.App.1962), 359 S.W.2d 523; Wood v. May (Wash.1968), 438 P.2d 587; Fullerton Lumber Co. v. Torborg (Wis.1955), 270 Wis. 133, 70 N.W. 2d 585.

Two recent Iowa decisions, while not applying the rule we herein adopt to the facts and circumstances of the case before the court at the time, indicate a sympathetic attitude toward such rule. In Baker v. Starkey, supra, 259 Iowa at 492–495, 144 N.W.2d at 896–897, we stated the rule and discussed the authorities but concluded by saying: "However, we do not believe the approach suggested, meritorious as it may be under appropriate circumstances, should be applied in the present case. The validity of the contract in each case must be determined on its own facts and a reasonable balance must be maintained between the interest of the employer and the employee." 259 Iowa at 495, 144 N.W.2d at 897–898. See also Kunz v. Bock (Iowa, 1968), 163 N.W.2d 442, 446.

The problems of noncompetitive covenants in employment contracts and in the sale of going businesses have been exten-

sively and intensively explored by the courts and legal writers. See the comprehensive treatment given the subject in Arthur Murray Dance Studios of Cleveland, Inc. v. Witter (Ohio Court of Common Pleas, 1952), 105 N.E.2d 685. The opinion does not, however, reach the specific problem of partial enforcement of indivisible covenants.

We have had our share of problems in this area. Kunz v. Bock (Iowa, 1968), 163 N.W.2d 442; Orkin Exterminating Co., Inc. v. Burnett (1967), 259 Iowa 1218, 146 N.W.2d 320; Baker v. Starkey, supra; Nelson v. Leaders (1966), 258 Iowa 919, 140 N.W.2d 921; Federated Mutual Implement & H. Ins. Co. v. Erickson (1961), 252 Iowa 1208, 110 N.W.2d 264; Mutual Loan Co. v. Pierce, supra; Larsen v. Burroughs (1938), 224 Iowa 740, 277 N.W. 463; Sioux City Night Patrol v. Mathwig (1938), 224 Iowa 748, 277 N.W. 457; McMurray v. Faust (1937), 224 Iowa 50, 276 N.W. 95; Haggin v. Derby (1930), 209 Iowa 939, 229 N.W. 257; Swigert & Howard v. Tilden (1903), 121 Iowa 650, 97 N.W. 82.

The arbitrary rule of "all or nothing at all" in the enforcement of noncompetitive agreements has, in some cases, led to results of questionable equity. Cogley Clinic v. Martini, supra (doctor was prevented from practicing anywhere in the Council Bluffs-Omaha area); Brecher v. Brown, supra (veterinary was permitted to practice within 100 feet of his former employer); Larsen v. Burroughs, supra (doctor prohibited from practicing in area for 10 years); Beit v. Beit (1948), 135 Conn. 195, 135 Conn. 413, 63 A.2d 161, 65 A.2d 171, 10 A.L.R.2d 734 (note in 23 Conn.Bar Jour. 40); see discussion in Solari Industries, Inc. v. Malady, supra, 264 A.2d at 60. Some courts, in order to avoid inequities, have indulged in doubtful construction of the provisions of the contracts, Haggin v. Derby, supra, 209 Iowa at 945–947, 229 N.W. at 260; Universal Electric Corp. v. Golden Shield Corp. (1st Cir. 1963), 316 F.2d 568; Plunkett Chemical Co. v. Reeve (1953), 373 Pa. 513, 95 A.2d 925, 43 A.L.R.

2d 91, 93; or have applied the legalistic "blue pencil rule" which permits a noncompetitive covenant to be partially enforced if the words which make it unreasonable can be stricken and still leave a grammatically meaningful reasonable restriction. See: Solari Industries, Inc. v. Malady, supra, 264 A.2d at 57; Wood v. May (Wash.1968), 438 P.2d 587, 590–591.

Corbin and Williston have long contended that partial enforcement of a restrictive covenant should not rest on the divisibility of reasonable and unreasonable portions of the covenant. They urge that there should be partial enforcement of restrictive covenants whenever possible without injury to the public or injustice to the parties.

"Public policy should go no farther in invalidating business contracts fairly entered into than necessity requires." Williston, Note on Beit v. Beit, 23 Conn.Bar Jour. 40, 42.

"In the best considered modern cases, however, the court has decreed enforcement as against a defendant whose breach has occurred within an area in which restriction would clearly be reasonable, even though the terms of the agreement imposed a larger and unreasonable restraint." Vol. 6A Corbin on Contracts, pp. 70–71, § 1390.

In Solari Industries, Inc. v. Malady, supra, 264 A.2d at 61, the New Jersey Supreme Court abandoned the void per se rule in favor of the rule which permits the total or partial enforcement of noncompetitive agreements to the extent reasonable under the circumstances. In doing so it overruled Hudson Foam Latex Products, Inc. v. Aiken (App.Div.1964), 82 N.J.Super. 508, 198 A.2d 136, relied on by plaintiff and from which we quoted in Baker v. Starkey (1966), 259 Iowa 480, 495–496, 144 N.W.2d 889, 898. The court stated: "As we see it, under either law [New York or New Jersey] these plaintiffs are entitled, subject to any affirmative defenses such as those asserted in the defendant's answer (citations) to that limited measure of relief within the terms of the

noncompetitive agreement which is reasonably necessary to protect their legitimate interests, will cause no undue hardship on the defendant, and will not impair the public interest."

We now adopt this rule and apply it to the facts and circumstances before us here.

II. In December 1962, Mr. Newman, the president and virtually sole owner of defendant corporation, hired plaintiff, an experienced and successful salesman, as sales manager and sales representative of its Iowa Truck Leasing Division, Iowa Warehouse's major source of income. The employment contract was not signed until sometime after plaintiff began work. Apparently it had been discussed at the time plaintiff accepted the position. In his testimony at trial, plaintiff indicated he was pressured into signing it but the issue is not argued on appeal. The trial court found the contract was voluntarily entered into.

Plaintiff's principal duty under the contract was to contact prospective customers for truck leasing within 150 miles of Waterloo. He was to make the necessary contacts to procure customers and once a customer was secured it was plaintiff's further duty to service the account, keep the customer satisfied and protect the defendant's investment in such a way that the leased equipment could be maintained and serviced without irritating the customer. Most of defendant's truck leasing customers had contact with plaintiff. He was the sole contact with many of them and developed a close and personal relationship with their managing officers. His duties were important and he performed them well. During his employment he contacted approximately 225 potential customers, most in Iowa, but some in Minnesota and Wisconsin. Nearly all of these contacts were within the 150 mile radius from Waterloo.

During the early years of his employment, plaintiff spent most of his time out-side of the office. The last three years he was out of the office about 50 per cent of the time. This was due to the resignation of the office manager who was not replaced. Plaintiff assumed his duties and at the termination of his employment was virtually managing defendant's truck leasing operation. At the termination of plaintiff's employment, defendant had 27 truck leasing customers. Rath Packing Company of Waterloo was the largest customer, providing 42 per cent of defendant's truck leasing income. Plaintiff did not secure Rath as a customer but was helpful in servicing the account. Twenty-eight per cent of defendant's leasing income was from outside the Waterloo community.

Over the course of his employment, plaintiff in fact solicited business in numerous cities and towns. However there were many small towns where he had not made any contacts and several major cities where defendant did not have any customers within the 150 mile radius. Plaintiff testified: "The defendant's business capacities could not reasonably cover all of the major cities within a 150 mile radius with truck leasing service without a major expansion program."

Plaintiff was the key man in the operation of the business. Mr. Newman testified that "I had personal contact with some of the customers but there are a number of them I haven't met. These are the ones whose contracts were negotiated by Mr. Ehlers. It is hard to overestimate the part Mr. Ehlers played. He was practically the whole show."

And again "They have called for Mr. Ehlers, I would say, 'Well, he's out. Can we help you?' 'Well, he's the man we always call for, he is the only one we know there.'"

Plaintiff conceded: "I am the primary representative of Iowa Warehouse Company with all the customers I have commitments from. * * * No one in Iowa Warehouse has the connections with these people that I have."

Mr. Ehlers and Mr. Newman had several conversations relative to plaintiff buying into the business during the last three years. When plaintiff became convinced nothing was ever going to come of these discussions, he gave notice of termination effective May 15, 1971. Between 1962 and 1971 his salary and bonus had increased from $12,519 to $29,211.

While still working for defendant and without defendant's knowledge, plaintiff made inquiries of defendant's customers as to what they would do in the event plaintiff bought out defendant's business or started one of his own. Verbal commitments to do business with him were secured from Iowa Warehouse customers in Cedar Rapids, Dubuque, Ottumwa, Manchester and Eagle Grove. One of Iowa Warehouse's former customers at the time of trial was renting trucks from plaintiff under an agreement entered into before he had left his job at Iowa Warehouse. These customers produced 25 per cent of defendant's gross income, almost all of his customers outside the Waterloo area.

■ III. Employer's first burden is "to show the reasonable necessity for the enforcement of the covenant at all in order to protect its business". There must be "some showing that defendant, when he left plaintiff's employment, pirated or had the chance to pirate part of plaintiff's business; took or had the opportunity of taking some part of the good will of plaintiff's business, or it can reasonably be expected some of the patrons or customers he served while in plaintiff's employment will follow him to the new employment." Mutual Loan Co. v. Pierce (1954), 245 Iowa 1051, 1056–1057, 65 N.W.2d 405, 408.

The foregoing factual recitation clearly shows this burden was met. This case is a typical example of the desirability of and the necessity for noncompetitive covenants when the employee has extensive and nearly exclusive contact with employer's customers. Personal loyalties develop which lead the customer to follow the employee to his former employer's detriment. Orkin Exterminating Co., Inc. v. Burnett, supra, 259 Iowa at 1222–1223, 146 N.W.2d at 324; Baker v. Starkey, supra, 259 Iowa at 493, 144 N.W.2d at 896; Mutual Loan Co. v. Pierce, supra, 245 Iowa at 1058, 65 N.W.2d at 409.

Although the record shows employer's business extended over a 150 mile radius from Waterloo, it also discloses many population centers within that radius in which employer had no local customers. It would therefore appear unnecessary to prohibit plaintiff from engaging in competitive business at all places within the 150 mile range in order to protect the employer's legitimate interests. Our primary concern should not be to discourage fair competition, but to protect defendant from the unfair advantage plaintiff would have with defendant's customers developed while in his employ. It would be an undue hardship on plaintiff to prohibit him from doing business in an area not served by defendant.

Plaintiff prepared and there was introduced into evidence as plaintiff's exhibit D, a list of all persons and firms contacted by plaintiff while employed by defendant. Defendant's interest would be adequately protected if plaintiff were enjoined from contacting, soliciting business from, or doing business with any person or firm appearing on that list. A two year limitation would appear adequate to enable the employer to establish a satisfactory relationship with customer's previously dealing with plaintiff.

IV. The record also discloses that there is keen competition in the truck leasing business in the areas served by defendant and the public interest is not impaired by enforcing the restrictive covenant to the extent we deem reasonable.

V. The record here does not show the employer took an unconscionable advantage of the employee, that the covenants were so broad as to constitute bad faith or

other circumstances indicating bad faith on the part of the employer.

VI. In adopting the rule that restrictive covenants in employment contracts should be enforced to a reasonable extent where possible without injury to the public or injustice to the parties we need not retreat from our approval of the language in Hudson Foam Latex Products, Inc. v. Aiken stated in Baker v. Starkey, supra, 259 Iowa at 495, 144 N.W.2d at 898. If the evidence disclosed the circumstances discussed therein, the good faith of the employer would become an issue. No covenant placed in the contract for reasons other than an attempt to protect the employer's legitimate interests should be enforced in equity.

"In considering this rule many authorities point to the danger that its application might tend to encourage employers and purchasers possessing superior bargaining power to insist upon oppressive restrictions. However, these contracts are always subject to the test of whether their purpose is contrary to public policy, and if there is any credible evidence to sustain a finding that they are deliberately unreasonable and oppressive, such covenants must be held invalid whether severable or not." Fullerton Lumber Co. v. Torborg (1955), 270 Wis. 133, 70 N.W.2d 585, 592.

On the other hand, equity should not permit an injustice which might result from total rejection of the covenant merely because the court disagrees with an employer's judgment as to what restriction is necessary to protect his business.

"In a very large number of cases, however, partial enforcement has been asked and has been granted, even though the contract contained no express provision for partial enforcement and even though no political or geographical territories have been separately named. These recognize the absence of personal fault or turpitude; they recognize the injustice of a total refusal of enforcement, rewarding the promise breaker and defrauder; they see only general benefit to the public instead

of harm; and they find no difficulty in determining in a practical and commonsense fashion between the reasonable and the unreasonable. This is not making a new contract for the parties; it is a choice among the possible effects of the one that they made, establishing the one that is the most desirable for the contractors and the public at large. Partial enforcement involves much less of a variation from the effects intended by the parties than total nonenforcement would. If the arguments in favor of partial enforcement are convincing, no court need hesitate to give them effect. Ample judicial support can be found in the reports." 23 Conn.Bar Jour., supra, at 49–50.

We therefore modify the trial court's decision by holding that plaintiff should be enjoined from directly or indirectly contacting, soliciting business from or engaging in the truck leasing, or any business substantially similar thereto, with any of the persons or firms listed in exhibit D for the period ending May 14, 1972. The costs of this appeal are to be divided one-half to plaintiff and one-half to defendant. The case is remanded to the trial court for decree and writ of injunction in accordance herewith.

Modified, affirmed and remanded.

MOORE, C. J., and RAWLINGS, REES and UHLENHOPP, JJ., concur.

BECKER and LeGRAND, JJ., dissent.

MASON and REYNOLDSON, JJ., take no part.

BECKER, Justice (dissenting).

I respectfully dissent.

I. The Iowa law to this date holds a covenant not to compete cannot be upheld in part and rejected in part. "It must be upheld as written or rejected." Brecher v. Brown, 235 Iowa 627, 17 N.W.2d 377

(1945). The majority overrules Brecher but allows other cases which state the same rule to stand.

Specifically, Baker v. Starkey, 259 Iowa 480, 483, 144 N.W.2d 889, 891 (1966) is in fact being overruled by the majority. In Baker we stated:

" * * * however, it is agreed the only issue presented on appeal is whether a court in equity should partially enforce, to the extent reasonable under the circumstances, a restrictive covenant in a contract of employment which by its written terms is too broad in scope of area or time to be itself reasonable.

"This issue presents the question whether a court will enforce such an agreement in part while holding the remainder invalid."

It would be difficult to couch the issue here in narrower terms. Both Baker and this case involve *employment* contracts. While the factual situations as they developed are different, this case and Baker are identical on the relevant issue involved; i. e., whether the court will enforce a covenant not to compete in part while the remainder is held invalid. Baker said, "No"; this court says, "Yes." Yet Baker is not overruled.

We did not merely quote from Hudson Foam Latex Products, Inc. v. Aiken (App. Div.1964), 82 N.J.Super. 508, 198 A.2d 136, we actually said, *"We adopt the following language of the New Jersey court:"* (Emphasis supplied).

" 'It must be remembered that restrictions such as those included in [paragraphs 3 and 4 of the present contract] * * * often go unchallenged. Employees, believing themselves bound by the restrictions in their employment contracts, no matter how broadly stated, may be intimidated by such language to the extent of forbearing gainful employment in positions which ostensibly fall within the covenant, perhaps thereby allowing their best talents to go unused. Employ-ers should not be permitted to include the broadest possible restrictions in an employment contract, thus achieving the greatest possible amount of protection for themselves, to the unreasonable restriction of an employee's right to use his skills to the best advantage, and then be enabled to enforce so much and so many of the restrictions as can be found by a court to be reasonable under the circumstances. If such were the rule, it would afford employers an unconscionable advantage over their employees.' " (loc. cit. 259 Iowa at p. 495, 144 N.W.2d at p. 898).

If, as the majority concludes, Solari Industries, Inc. v. Malady, 55 N.J. 571, 264 A.2d 53, overrules Hudson how can we adopt Solari without repudiating our adoption of the rule in Hudson? It was my understanding that Baker v. Starkey, supra, had settled this matter, at least for the present, as to *employment contracts* but left the matter somewhat unsettled as to *sales contracts*. If we are to reverse our field we should clearly so indicate.

Similarly in Kunz v. Bock, 163 N.W.2d 442, 446 (Iowa 1968), we recognized the issue presented in Baker, our prior rejection of the partial enforcement doctrine and said:

"We are not prepared to say that there can be no circumstances under which partial enforcement should be decreed or a contract reformed to express the true agreement but the case at bar does not present such a case."

Kunz involved the sale of a business, not an employment contract. The reasons for going to the partial enforcement doctrine are much more persuasive in such a case than they are in employment contracts. See Baker v. Starkey, supra, (loc. cit. 259 Iowa at pp. 491, 495, 144 N.W.2d 889); Arthur Murray Dance Studios of Cleveland v. Witter, 105 N.E.2d 685, 703, 704 (Ohio Com.Pl.1952). Certainly if we adopt the majority's present view as to employment contracts we must also adopt the same view as to business sale contracts (although the

converse would not necessarily be true). Yet Kunz is contra but not overruled.

The "new trend" adopted by the majority abandons basic tenets of contract construction and interpretation as they apply to covenants not to compete. The tenets involve illegality of restraint of trade, intent as the polestar of contract construction and indivisibility of the covenant. The new approach overrules all prior cases dealing with this type covenant because all were predicated on those three factors.

II. This new principle should be adopted if by partial enforcement and rewriting the contract, as the rule undoubtedly contemplates, a greater fairness in the regulation of business restraints would be achieved. In 23 Conn.Bar Jour. 40, 50 (1949), Professor Williston says:

> " 'If the arguments in favor of partial enforcement are convincing, no court need hesitate to give them effect. Ample judicial support can be found in the reports.' "

The trouble is the arguments are convincing only if our public policies against restraint of trade and changing contracts are severely diluted.

III. We start with the basic tenets that restraints on competition and trade are disfavored in the law. Exceptions are made under narrowly prescribed limitations. Out of these exceptions came the concept that a business man could protect himself against competition from a former employee or a vendor *to a reasonable extent*. This was to be done by contract—through the normal give and take of contractual bargaining. But if the covenants were found to be an unreasonable restraint on trade or competition, they were to be held void in their entirety as against public policy.

The second principle is equally important. It was reaffirmed in Baker v. Starkey, supra, by reference to Smith v. Stowell, 256 Iowa 165, 170–172, 125 N.W.2d 795, 798–799 (1964), the courts will not make a contract for the parties:

> " 'The court may not rewrite the contract for the purpose of accomplishing that which, in its opinion, may appear proper, or, on general principles of abtract justice, or under the rule of liberal construction, make for the parties a contract which they did not make for themselves, or make for them a better contract than they chose, or saw fit, to make for themselves, or remake a contract, under the guise of construction, because it later appears that a different agreement should have been consummated in the first instance, or in order to meet special circumstances or contingencies against which the parties have not protected themselves.' "

This language is, of course, subject to the exceptions dealing with reformation which has its own special rules. Reformation is not relied upon in reaching the result portended by the "new trend".

The thrust of the law in contract interpretation is to reach the intent of the parties. In Hamilton v. Wosepka, 261 Iowa 299, 306, 154 N.W.2d 164, 168 (1967) we quoted Professor Corbin as follows:

> " 'The purpose of interpretation as justice requires is always the discovery of actual intention:—the intentions of both parties if they are the same,—the actual intention of one party if the other knew or had reason to know what it was,—*but absolutely never to give effect to a meaning of words that neither party in fact gave them, however many other people might have given them that meaning.*' " (Emphasis supplied).

These two tenets, taken together, have tended to put the bargaining parties, employer vs. employee and vendor vs. vendee, on equal footing when it came time to bargain. While open competition is favored, reasonable restraints may be imposed as fair and necessary protection of the employer or vendor. The parties must make a bargain now in advance and the bargain must be reasonable in time, space, service performed and in relation to the facts of

the case. The courts will not remake the terms of the contract for the parties.

It has been said that for every litigated case testing covenants not to compete there are thousands of like covenants that never reach the courts. Harlan N. Blake, Employee Agreements Not to Compete, 73 Harv.L.Rev. 625, 682. Professor Blake argues there are so many such covenants that the large employers find it necessary to use forms. These forms are not tailored to the individual case. Therefore, the partial enforcement policy is justified because the employer did not really want to overreach. The employee just got caught in someone else's covenant! A strange rationale for reforming or remaking a contract but fairly typical of the reasoning in this field.

IV. One would hope that under the fairly equalized bargaining position maintained by the classic approach most covenants are in fact reasonable. But we now say it is not necessary that the restraints contained in the covenant be reasonable. The courts, rather than the bargaining parties, will decide what is reasonable and interpret the contract *as though the covenant now reads as the court thinks it should read*. Put in these rather stark terms it is almost unbelievable that the courts would reach such a conclusion.

An explanation for such a new trend is the nature of the controversies that *do* reach the courts, as distinguished from the actions under thousands of contracts that do not reach the courts. The legal protagonists are almost invariably *both guilty of overreaching*. The courts find it hard to allow one to get ahead of the other. To prevent this they are apparently willing to give only lip service to the law's disfavor of restraint of trade and to the principle that the courts will not change the contract made by manifestation of mutual consent.

The solution makes for better equities in the "tip of the iceberg" cases in litigation— that must be admitted. But what does it do to the bargaining position of the vast majority of nonlitigated cases at the cru-

cial draftsmanship level? It destroys the balance heretofore maintained by the classic principle.

The limitations on the right to stifle competition by covenants not to compete were designed to prevent overreaching by the dominant party and to protect our competitive system. The majority now removes the sanctions which made such limitations effective at the very time our changing economic and social conditions make it more, not less, important to afford employees and business proprietors the protection of the old rule.

I believe it is a mistake to do so. I would affirm the trial court.

LeGRAND, J., joins in this dissent.