IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 10, 2003 Session

## MARC J. KAYEM, M.D. v. WILLIAM ROBERT STEWART, JR., M.D.

**Direct Appeal from the Chancery Court for Maury County**
**No. 97-594     Jim T. Hamilton, Judge**

_____

**No. M2002-01515-COA-R3-CV - Filed October 9, 2003**

_____

Plaintiff filed suit to recover sums allegedly due under a contract of employment. The trial court awarded partial summary judgment to defendant, finding plaintiff was not entitled to certain percentages of accounts receivable. The trial court further found plaintiff had breached the contract and a covenant not to compete, and awarded defendant a judgment of $12,500. The trial court also awarded defendant's attorney's fees. We affirm in part, reverse in part, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed in part and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which HOLLY M. KIRBY, J. and WILLIAM H. INMAN, SP. J., joined.

Scott C. Williams and Stephanie S. Maxwell, Columbia, Tennessee, for the appellant, Marc J. Kayem, M.D.

Thomas W. Hardin and Patrick M. Carter, Columbia, Tennessee, for the appellee, William Robert Stewart, M.D.

## OPINION

This dispute arises from an employment agreement which included a covenant not to compete. In March 1994, Marc J. Kayem, M.D. (Dr. Kayem) and William Robert Stewart, Jr., M.D. (Dr. Stewart) entered into a two-year contract which provided that Dr. Kayem would practice otolaryngology as an employee of Dr. Stewart at Columbia Ear, Nose & Throat in Columbia, Tennessee. The contract provided that Dr. Kayem would receive as compensation forty percent of the first $300,000 of gross receipts attributable to services provided by him, and forty-five percent of such receipts in excess of $300,000. It further provided that during the first year of employment, Dr. Kayem would receive a minimum of $120,000 in compensation. Under the contract, Dr. Kayem was entitled to a minimum of two weeks annual vacation leave, with vacation periods

established by mutual agreement. Vacation leave was to be increased to three weeks a year once gross receipts attributable to Dr. Kayem reached $300,000. The contract also included a covenant not to compete and provisions for termination with and without cause.

In accordance with the contract, Dr. Kayem submitted a letter of resignation without cause in August 1997. His resignation was accepted by Dr. Stewart, who indicated Dr. Kayem's last day of employment would be December 1, 1997. In late August and early September, a dispute arose concerning Dr. Kayem's vacation time. Dr. Kayem took unauthorized leave September 5 and 8, which resulted in his immediate termination for cause.

On September 17, Dr. Kayem filed a complaint against Dr. Stewart in the Chancery Court of Maury County. In his complaint, Dr. Kayem alleged that Dr. Stewart changed the terms and conditions of employment after receiving Dr. Kayem's resignation. He further alleged that the September leave giving rise to his termination for cause had been arranged and accepted prior to his resignation, and that Dr. Stewart had breached the contract by terminating the contract without payment of ninety days severance pay. Dr. Kayem sought a restraining order prohibiting enforcement of the covenant not to compete, contending it was more restrictive than necessary to protect Dr. Stewart's interests, that the territorial limit of fifty miles was unreasonable and resulted in undue hardship, and that it was against public policy. He further requested permission to provide follow up services to his patients, and to practice medicine at specific locations not in competition with Dr. Stewart's practice. Dr. Kayem also prayed for a declaratory judgment declaring the rights of the parties under the contract, for severance pay due under the contract for termination without cause with less then ninety-days notice, for forty-five percent of collections attributable to his services, and pension and education benefits.

On September 19, the trial court issued a temporary order restraining Dr. Stewart from enforcing the covenant not to compete. The parties entered into an agreed order extending the restraining order on October 6. The terms of the agreed order provided that, pending further action of the court, Dr. Kayem would be permitted to: 1) provide services as a contracted emergency department physician at Maury Regional Hospital until January 1, 1998; 2) provide otolaryngology services, including surgery, at the specialty clinic in Marshall County until January 1, 1998; 3) provide fallow-up care for recent surgical patients and treat a limited number of patients who requested that he perform their surgeries prior to his termination.

Dr. Stewart filed an answer and counter-claim on October 9, alleging material breach by Dr. Kayem and seeking enforcement of the covenant not to compete, damages under the contract, attorney's fees and costs. Dr. Stewart moved for partial summary judgment regarding whether Dr. Kayem was entitled to forty-five percent of collections attributable to his services prior to termination. Dr. Kayem cross-moved for partial summary judgment on the same issue. The trial court granted Dr. Stewart's motion in July 1998. Following a February 2002 trial, the trial court entered judgment for Dr. Stewart, awarding him damages of $12,500, $584.50 in discretionary costs, and $26,006.28 in attorney's fees. Dr. Kayem now appeals to this Court.

## Issues Presented for Review

Dr. Kayem raises the following issues for our review:

(1)     Whether the trial court erred in granting Dr. Stewart's motion for partial summary judgment and denying Dr. Kayem's cross-motion for partial summary judgment.

(2)     Whether the trial court erred in ruling that the covenant not to compete, contained in the Employment Agreement, was reasonable, that Tenn. Code Ann. § 63-6-204 did not apply to the covenant not to compete, and that Dr. Stewart was therefore entitled to liquidated damages in the amount of $12,500.

(3)     Whether the trial court erred in ruling that Dr. Kayem's conduct amounted to a material breach of the Employment Agreement.

(4)     Whether the trial court erred in ruling that Dr. Kayem was not entitled to severance pay.

(5)     Whether the trial court erred in ordering Dr. Kayem to pay Dr. Stewart's attorney's fees for matters in the case other than those directly related to the covenant not to compete.

## Standard of Review

The interpretation of a contract is a matter of law. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). We review the trial court's conclusions on matters of law *de novo*, with no presumption of correctness. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). When the language of the contract is plain and unambiguous, courts determine the intentions of the parties from the four corners of the contract, interpreting and enforcing it as written. *Int'l Flight Ctr. v. City of Murfreesboro*, 45 SW3d 565, 570 (Tenn. Ct. App. 2000). A contract is not rendered ambiguous simply because the parties disagree as to the interpretation of one or more of its provisions. *Id.* at n5. Whether a party has breached a contract is a question of fact. *McInturff v. Neeseman*, 986 S.W.2d 11, 12 (Tenn. Ct. App. 1998)(perm. app. denied). We review a trial court's findings of fact with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d).

## The Partial Summary Judgment Award

The trial court awarded Dr. Stewart partial summary judgment on the issue of whether Dr.

-3-

Kayem was entitled to forty-five percent of the collections for services attributable to him while employed by Dr. Stewart but received after Dr. Kayem's termination. (Vol 1 at 125) The controlling contract clause reads:

> 2.01 Compensation: For all services provided EMPLOYER pursuant to the provisions of this Agreement, EMPLOYER agrees to compensate EMPLOYEE as follows:
>
> > a.. Forty percent (40%) of the first $300,000.00 of EMPLOYER's gross receipts which are attributable to services of EMPLOYEE and forty-five percent (45%) of EMPLOYER's gross receipts in excess of $300,000.00 which are attributable to services of EMPLOYEE.

The trial court interpreted this clause as limiting the sums due to Dr. Kayem to a percentage of collections actually received by Dr. Stewart prior to Dr. Kayem's termination. Accordingly, the trial court determined Dr. Kayem was not entitled to a percentage of those collections which were attributable to his services but not received by Dr. Stewart until after Dr. Kayem's termination.

We disagree with the trial court's interpretation. A plain reading of the contract provides that Dr. Kayem is entitled to a percentage of gross receipts attributable to his services. It does not limit his entitlement to amounts collected before his termination.

We accordingly hold that Dr. Kayem is entitled to forty-five percent of all amounts collected by Dr. Stewart for services attributable to Dr. Kayem, regardless of whether those amounts were received prior to or after Dr. Kayem's termination. The award of partial summary judgment to Dr. Stewart is reversed. We award Dr. Kayem summary judgment on this issue.

### *The Covenant not to Compete*

The employment contract included the following covenant not to compete:

> 3.05 Restrictive Covenant: Upon termination of this Agreement for any reason, EMPLOYEE [Dr. Kayem] agrees that he will not, for a period of two (2) years, associate himself with or engage in, directly or indirectly, the practice of medicine within fifty (50) miles of the city limits of Columbia, Tennessee, except that EMPLOYEE may practice medicine within the city limits of Nashville, Murfreesboro and Dickson, Tennessee. In the event of the violation of any of the terms hereof by EMPLOYEE, the valuation of the injury from which would be difficult of ascertainment, EMPLOYEE will pay to EMPLOYER [Dr. Stewart] the sum of Twelve Thousand Five Hundred Dollars ($12,500.00) per month for each month that he breaches the provisions of this paragraph, not as a penalty, but as liquidated damages therefor. However, it is understood and agreed that the rights as

outlined below shall not be reduced or avoided by the terms of this provision for liquidated damages. It is mutually agreed that any breach or evasion of any of the terms of this paragraph will result in immediate irreparable injury to EMPLOYER and will authorize recourse to injunction as well as to all other legal or equitable remedies to which EMPLOYER may be entitled hereunder in addition to such remedies as set forth above. In the event of a breach of this Agreement, EMPLOYEE agrees to pay all costs and expenses, including attorney's fees, incurred by EMPLOYER.

If any court shall determine that the nature, duration or geographical limit of any restriction contained above is unenforceable, it is the intention of both EMPLOYEE and EMPLOYER that the restrictions set forth herein will not be thereby terminated but shall be deemed reduced to the extent required to render them valid and enforceable.

The trial court found the covenant was clear, unambiguous and reasonable, and awarded Dr. Stewart damages in the amount of $12,500 for breach of the covenant by Dr. Kayem.

Dr. Kayem argues that the covenant not to compete is unenforceable as a matter of law under Tenn. Code Ann. § 63-6-204. He further submits that the covenant does not prohibit him from soliciting former patients, and that even if it did, there is no proof that he directly solicited the former patients whom he treated. Dr. Kayem testified at trial that he did not solicit new patients in the prohibited area after leaving the employ of Dr. Stewart, although he did treat new patients who came into the clinic in Maury County. Dr. Kayem contends that because 1) he had accepted a position in California and planned to relocate in late November, 1997; 2) had no intention of remaining in the area or competing with Dr. Stewart; 3) worked in a limited capacity for only a two-month period; 4) had an ethical obligation to finish up treatment of former patients; and 5) did not solicit patients, he did not violate the spirit of the covenant. Dr. Stewart contends that Tenn. Code Ann. § 63-6-204 is inapplicable to this case, and that Dr. Kayem's employment in Maury and Marshall Counties were in direct violation of an enforceable covenant.

Section 63-6-204 provides that "employing entities" shall not restrict an employed physicians right to practice medicine except under certain enumerated conditions. Tenn. Code Ann. § 63-6-204(d)(2)(1997). The section defines "employing entity" as "a hospital licensed under title 68, chapter 11, or title 33, chapter 2, or an affiliate of such an entity, that employs one (1) or more physicians." Tenn. Code Ann. § 63-6-204(d)(7)(D)(1997). Dr. Kayem does not allege that Columbia Ear, Nose and Throat is a hospital so licensed. Dr. Stewart contends it is clearly not such an entity, and we find nothing in the record to indicate otherwise. We accordingly agree with Dr. Stewart that Tenn. Code Ann. § 63-6-204 is inapplicable in this case.

Tennessee follows the "rule of reasonableness" approach to covenants not to compete. *Cent. Adjustment Bureau, Inc. v. Ingram*, 678 S.W.2d 28, 37 (Tenn. 1984). This rule provides:

[U]nless the circumstances indicate bad faith on the part of the employer, a court will enforce covenants not to compete to the extent they are reasonably necessary to protect the employer's interest "without imposing undue hardship on the employee when the public interest is not adversely affected."

*Id.* (quoting *Ehlers v. Iowa Warehouse Co.*, 188 N.W.2d 368, 370 (Iowa 1971)). Thus courts can modify and enforce covenants not to compete to the extent that they are reasonable and not repugnant to public policy. *Id.* Additionally, a covenant not to compete that is "deliberately unreasonable and oppressive" is not valid and will not be enforced. *Id.*

The order of the trial court in the present case states:

This Court finds the Covenant, which was for a two (2) year duration, limited the medical practice within a fifty (50) mile radius of the city limits of Columbia, Tennessee. The cities of Nashville, Murfreesboro and Dickson are especially exempted from the prohibitions of the covenant. The restrictions are clear, unambiguous and reasonable considering the area in which Defendant's patients' reside.

This Court finds that the Plaintiff signed the Employment Agreement, including the Covenant Not to Compete, after consulting with his attorney. Plaintiff has failed to make a clear showing that he had the right to practice medicine in the restricted area.

The trial court further found Dr. Stewart was entitled to damages of $12,000.

Upon review of the record, we find no suggestion of bad faith on the part of Dr. Stewart. We agree with the trial court that the covenant not to compete was reasonable in time and geographic scope and did not impose an undue hardship on Dr. Kayem.[1] We accordingly affirm the judgment of the trial court on this issue.

### *Severance Pay*

The contract was automatically renewable for successive terms of one year and included provisions for termination. Section 4.01 of the contract provided:

---

[1]This Court recognizes that covenants not to compete in professions such as Medicine often involve important public interest considerations, including the right of a patient to choose his physician and the benefit of having qualified practitioners in specialized fields. See *Med. Educ. Assist. Corp., v Tennessee*, 19 S.W.3d 803, 816 (Tenn. Ct. App. 1999)(perm. app. denied). We do not address the public interest considerations here, however, as Dr. Kayem did not intend to continue to practice medicine in Tennessee after leaving Dr. Stewart's employ, but had accepted employment in California.

This Agreement may be terminated upon the occurrence of any of the following events:

a.    Without cause, by notice in writing to the other party given ninety (90) days prior to the date of termination. In the event either party fails to give the ninety (90) days notice, he shall be liable to the other party for an amount equal to ninety (90) days base salary.

b.    Material breach of contract by EMPLOYEE or EMPLOYER.

c.    Death of EMPLOYEE or disability of EMPLOYEE which renders EMPLOYEE unable to perform his duties.

d.    If EMPLOYER has just cause which shall include, but not be limited to, EMPLOYEE conducting himself in an unprofessional, unethical or fraudulent manner, and if, in the opinion of EMPLOYER, such conduct discredits EMPLOYER or is detrimental to the reputation, character and standing of EMPLOYER.

Upon termination for any of the foregoing events, the EMPLOYEE shall be entitled to compensation and benefits accrued but unpaid as of the termination date.

In November 1996, the parties renewed the contract for a one-year period according to the same terms. In August 1997, Dr. Kayem submitted a letter of resignation in accordance with the termination provisions of the contract. His resignation was to be effective January 2, 1998. Dr. Stewart accepted Dr. Kayem's resignation by letter dated August 21, 1997. In his letter, Dr. Stewart stated that Dr. Kayem's resignation was accepted as resignation without cause in accordance with section 4.01 of the contract. He further stated that, in accordance with the contract, Dr. Kayem's last day of employment would be December 1, 1997.

In late August and early September 1997, a dispute arose regarding Dr. Kayem's plans to be out of the office on Friday, September 5 and Monday September 8. On September 2, Dr. Stewart sent Dr. Kayem a letter confirming an August 29 conversation about Dr. Kayem's leave time. In the letter, Dr. Stewart stated that Dr. Kayem had exceeded allotted vacation and personal leave days. Dr. Stewart further stated that for the remainder of his tenure, Dr. Kayem would, therefore, be expected to be at work when the office was open and on days and times designated for surgery, regardless of whether Dr. Kayem had surgery scheduled. Dr. Stewart concluded by stating, "[y]ou are specifically advised that any deviation from this will be considered by me as a material breach of our employment agreement which among other things would justify immediate termination of the Employment Agreement and yourself."

Notwithstanding Dr. Stewart's letter, Dr. Kayem was absent from the office on September 5 and 8. Dr. Stewart responded by letter of September 10, 1997, advising Dr. Kayem that he was in material breach of the contract. Dr. Stewart wrote, "[a]ccordingly, please accept this as notice of the immediate termination of the Employment Agreement and your employment. You will be entitled to compensation and benefits accrued but unpaid as of this date."

The trial court found that Dr. Kayem had breached the contract and, therefore, was terminated for cause under section 4.01(b) of the contract. The trial court accordingly found Dr. Kayem was not entitled to severance pay. We review this determination with a presumption of correctness unless the evidence preponderates otherwise. *McInturff v. Neeseman*, 986 S.W.2d at 12; Tenn. R. App. P. 13(d).

The evidence in this case does not preponderate against the trial court's finding. Although Dr. Kayem had submitted his resignation prior to being terminated, he remained bound by the contract provisions throughout his tenure. He was unambiguously advised by Dr. Stewart that he had exceeded his allotted leave time, and that he was expected to be in the office on September 5 and 8, 1997. His absence from the office on those dates amounted to a breach of the contract, and Dr. Kayem accordingly was terminated for cause. The judgment of the trial court is affirmed on this issue.

### *Award of Attorney's Fees*

The trial court awarded Dr. Stewart his attorney's fees of $24, 006.28. Dr. Kayem contends that the trial court erred in awarding Dr. Stewart attorney's fees for matters not directly related to the covenant not to compete. He contends that the contract provides for attorney's fees only with respect to disputes over the covenant.

Courts must construe the provisions of a contract together, seeking to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the language they employed. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). A contractual term is ambiguous where it may be reasonably understood in more than one way. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002). Provisions of a contract which are ambiguous must be construed against the party who drafted it. *Gen. Constr. Contractors Ass'n v. Greater St. Thomas Baptist Church*, 107 S.W.3d 513, 521 (Tenn. Ct. App. 2002).

Section 3.05 of the employment contract contains a provision for the payment of attorney's fees. This section provides: "[i]n the event of a breach of this Agreement, EMPLOYEE agrees to pay all costs and expenses, including attorney's fees, incurred by EMPLOYER." Dr. Stewart asserts that the plain language of this sentence contemplates the payment of attorney's fees in the event of any breach of the agreement, and is not limited to matters regarding the covenant not to compete.

Although we agree with Dr. Stewart that the plain language of the sentence is clear, its placement within the section relating to the covenant not to compete creates ambiguity. It is one

sentence included in a paragraph which otherwise relates only to the covenant not to compete, and which is followed by a paragraph concerning the enforceability of the covenant. The payment of attorney's fees is not mentioned elsewhere in the contract. Reviewing the contract in its entirety, we agree with Dr. Kayem that it anticipates an award of attorney's fees only for matters relating to enforcement of the covenant not to compete. Insofar as the provision is ambiguous, we must construe it against the drafter, Dr. Stewart.

We accordingly modify the trial court's award of attorney's fees to Dr. Stewart. Dr. Stewart is entitled to reasonable attorney's fees only for matters regarding the covenant not to compete. We remand to the trial court for a determination of reasonable attorney's fees in accordance with the foregoing.

## *Conclusion*

We affirm the trial court's determination that Dr. Kayem materially breached the contract of employment and, therefore, is not entitled to severance pay. We further affirm the trial court's judgment that the covenant not to compete was reasonable, and affirm judgment in the amount of $12,500 to Dr. Stewart. We disagree with the trial court that Dr. Kayem was not entitled to a percentage of collections attributable to his services but not received until after his termination. The award of partial summary judgment to Dr. Stewart on this issue accordingly is reversed, and partial summary judgment to Dr. Kayem is awarded. We also reverse the trial court's determination that Dr. Stewart was entitled to all of his attorney's fees under the contract. We modify the award of attorney's fees, limiting the award to fees incurred to enforce the provisions of the covenant not to compete. We remand for a determination of the amount due Dr. Kayem for collections attributable to his services, and for modification of the award of attorney's fees to Dr. Stewart consistent with this opinion. Costs of this appeal are taxed one-half to appellee, William Robert Stewart, M.D., and one-half to the appellant, Marc J. Kayem, M.D., and his surety, for which execution may issue if necessary.

 

 

 

_____
DAVID R. FARMER, JUDGE